12 MISC 00290

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x

Julius Klein Diamonds, LLC;

                         Plaintiff,

        - against -

Gemological Institute of America, Inc.;
and Tat Keung Yee;

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - x

CASE NO.:



# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## APPLICATION FOR TEMPORARY RESTRAINING ORDER

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jerome J. Lawton
Four Times Square
New York, New York 10036
Telephone:  (212) 735-2982
Fax:  (917) 777-2982
Attorneys for Plaintiff

Dated: New York, New York
      August 28, 2012

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 3

ARGUMENT ..................................................................................................................... 5

I.      THE STANDARD FOR A TEMPORARY RESTRAINING ORDER ............................. 5

II.     PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS .............. 6

        A.      Plaintiff Is Likely To Succeed on the Merits of its Declaratory Judgment
                Claim Against GIA and YTK ................................................................................ 6

        B.      Plaintiff Is likely To Succeed on the Merits of its Conversion Claim
                Against YTK ......................................................................................................... 7

III.    PLAINTIFF WILL SUFFER IRREPARABLE HARM IF GIA RELEASES THE
        3.08 DIAMOND BEFORE OWNERSHIP IS DETERMINED ........................................ 7

IV.     INJURY TO PLAINTIFF OUTWEIGHS ANY POSSIBLE HARM TO
        DEFENDANTS ............................................................................................................... 9

V.      A TEMPORARY RESTRAINING ORDER WILL SERVE THE PUBLIC
        INTEREST ....................................................................................................................... 9

# TABLE OF AUTHORITIES

## CASES

*Andino v. Fischer,*
    555 F. Supp. 2d 418 (S.D.N.Y. 2008)..............................................................5

*Continental Casualty Co. v. Coastal Savings Bank,*
    977 F.2d 734 (2d Cir. 1992)........................................................................6

*New York Land Co. v. Republic of Philippines,*
    634 F. Supp. 279 (S.D.N.Y. 1986), *aff'd sub nom. Republic of Philippines v.*
    *Marcos,* 806 F.2d 344 (2d Cir. 1986) ...............................................7, 8, 9

*Republic of Philippines v. Marcos,*
    787 F. Supp. 397 (S.D.N.Y. 1992) ...............................................................8

*Salinger v. Colting,*
    607 F.3d 68 (2d Cir. 2010).........................................................................5

*U.S. Polo Ass'n v. PRL USA Holdings, Inc.,*
    800 F. Supp. 2d 515 (S.D.N.Y. 2011)...........................................................5

*Weizmann Institute of Science v. Neschis,*
    229 F. Supp. 2d 234 (S.D.N.Y. 2002)...........................................................7

## OTHER AUTHORITIES

*China Sentences 9 Indian Traders for Smuggling Diamonds, 13 to be Deported,* FirstPost
    (Dec. 7, 2011), http://www.firstpost.com/world/china-sentences-9-indian-traders-
    for-smuggling-diamonds-13-to-be-deported-150361.html (last visited Aug. 26,
    2012) ...............................................................................................10

Plaintiff Julius Klein Diamonds, LLC, a New York limited liability company ("JKD" or "Plaintiff") respectfully submits this memorandum of law in support of its Application for Temporary Restraining Order enjoining defendant Gemological Institute of America, Inc. ("GIA") from releasing a certain 3.08 carat round diamond (the "3.08 Diamond") to Tat Keung Yee, the individual who recently submitted the 3.08 Diamond to GIA ("YTK"), pending determination as to the true ownership of the 3.08 Diamond.

## PRELIMINARY STATEMENT

The 3.08 Diamond is one of four diamonds (the "Memo Diamonds") delivered by JKD to Olympic Diamonds Corp., a New York corporation ("Olympic") in June 2010 for inspection and possible sale, pursuant to three distinct consignment agreements. The Memo Diamonds are also covered by Plaintiff's Uniform Commercial Code filings. When Plaintiff demanded the return of the Memo Diamonds from Olympic, it learned that Olympic had delivered at least three of the Memo Diamonds to Ten Plus Ltd. ("Ten Plus"), a Hong Kong company. Subsequently, Plaintiff was informed that three of the Memo Diamonds, including the 3.08 Diamond, were lost or may have been wrongfully disposed of by a Ten Plus employee. On August 20, 2012, over two years after the disappearance of the 3.08 Diamond, JKD was notified that the 3.08 Diamond had recently been submitted by an individual to GIA's Hong Kong office for recertification. On August 27, 2012, GIA identified the individual who submitted the 3.08 Diamond to GIA's Hong Kong office as Mr. Tat Keung Yee and advised Plaintiff by letter that unless JKD resolved its claim to the diamond with YTK or "obtain[ed] a directive from law enforcement or an order from a court having jurisdiction over GIA directing GIA to hold the diamond or to deliver it to a third party, then GIA will consider returning the diamond to YTK...."

In order to prevent GIA from releasing the 3.08 Diamond to YTK and thereby putting the 3.08 Diamond out of Plaintiff's reach, Plaintiff seeks a temporary restraining order enjoining GIA from releasing the 3.08 Diamond to YTK pending determination as to its ownership.

As demonstrated below, a temporary restraining order preventing GIA from releasing the 3.08 Diamond is warranted due to the urgent nature of this case.  Plaintiff is likely to succeed on the merits of its declaratory judgment claims against both GIA and YTK, because it can show that the 3.08 carat diamond currently in possession of GIA is the very same diamond that it delivered to Olympic in June 2010 and was not returned to Plaintiff on demand as required by the consignment agreement.   Plaintiff can likewise demonstrate that the 3.08 Diamond was delivered to Olympic solely for inspection and possible sale and that Plaintiff never consented to the sale of the 3.08 Diamond, or issued a sales invoice for the 3.08 Diamond.  Plaintiff is also likely to succeed on the merits of its conversion claim against YTK.  Documentary evidence shows that Plaintiff has legal ownership of the 3.08 Diamond and that YTK acted without authorization to interfere with Plaintiff's ownership rights.

Plaintiff will suffer irreparable harm if the 3.08 Diamond is released to YTK, since the release would put the 3.08 Diamond that was wrongfully obtained from Plaintiff firmly out of Plaintiff's reach in a foreign country.  In addition, the hardship suffered by Plaintiff if the 3.08 Diamond is released to YTK, would be significantly greater than that of GIA (which does not have ownership claims over the 3.08 Diamond) or YTK (who would merely be prevented from possessing the 3.08 Diamond during the pendency of the ownership dispute).  Whereas Plaintiff is unlikely to ever retrieve the 3.08 Diamond if it is released to YTK.  The public interest will also be served by a temporary restraining order, as it will support the legal, documented, transparent transfer of diamonds, as opposed to a criminal, underground trade.  Accordingly,

Plaintiff has demonstrated its need for a temporary restraining order enjoining GIA from releasing the 3.08 Diamond to YTK while its true ownership is determined.

## FACTUAL BACKGROUND[1]

In June 2010, JKD, a New York limited liability company, delivered the four Memo Diamonds to Olympic, a New York corporation, for inspection and possible sale. The Memo Diamonds were delivered to Olympic pursuant to three consignment agreements (each a "Memo" and collectively, the "Memos"), as follows:

> (i) Memo No. 343246: dated June 15, 2010, for one 7.98 carat stone totaling $189,604.80;
>
> (ii) Memo No. 342771: dated June 2, 2010, for one 3.18 carat stone and one 3.08 carat stone, totaling $473,256.00; and
>
> (iii) Memo No. 343982: dated June 27, 2010, for one 3.15 carat stone, totaling $55,755.00 (all Memos attached as Exhibit A).

Each of the Memo Diamonds was certified by GIA, a nonprofit corporation incorporated in California with management and laboratory offices in New York that specializes in analyzing, grading and identifying diamonds and other gemstones. When GIA grades a diamond, it issues a certificate number that remains in its database. The GIA certificate number for each of the Memo Diamonds is listed on its respective Memo. The GIA certificate number for the 3.08 Diamond is 1112901343, as evidenced by Memo No. 342771. In addition to being certified by GIA, each of the Memo Diamonds was covered by an insurance policy – the Jewelers Block Policy No. B0799NJ100490d (the "Policy", attached as Exhibit B) provided by Lonmar Global Risks (the "Underwriters"). The Policy provided world-wide coverage for the Memo Diamonds insuring Plaintiff in case of loss.

---

[1] The below facts are set forth in the Declaration of Jerome J. Lawton (the "Lawton Declaration"), filed concurrently herewith. References to exhibits herein are to the exhibits attached to the Lawton Declaration.

After inspection, Olympic was to promptly contact JKD with any offer to buy the Memo Diamonds or return them to JKD. Olympic gave JKD a check in the amount of each Memo, which JKD was to hold and deposit only if JKD received an acceptable offer from Olympic and agreed to a sale of any of the Memo Diamonds and issued an invoice for the respective Memo Diamond(s).

After approximately 30 days from the issuance of the first consignment agreement, on or about July 1, 2010, Olympic had not contacted JKD with an offer to buy any of the Memo Diamonds and JKD demanded their return. At no time did JKD consent to the sale of any of the Memo Diamonds or issue any invoice to Olympic or deposit any of its checks. Upon demanding the return of the Memo Diamonds, JKD was informed that Olympic had delivered at least three of the Memo Diamonds to Ten Plus, a Hong Kong jewelry company, for inspection and possible sale. JKD demanded that the Memo Diamonds be returned immediately. Shortly thereafter, Olympic returned one of the Memo Diamonds (the diamond referenced in Memo No. 343982), but advised JKD that it appeared that the three remaining Memo Diamonds, including the 3.08 Diamond, had been wrongfully disposed of by a Ten Plus employee and were lost. JKD immediately filed a claim under the Policy with its Underwriters' insurance representative in July 2010. Although JKD's claim for the loss was made over two years ago, payment from Underwriters has been delayed by Underwriters' claims of an ongoing investigation. Soon after the disappearance of three of the Memo Diamonds, Ten Plus was the subject of a liquidation proceeding in Hong Kong and none of the three missing Memo Diamonds were ever found or accounted for.

On August 20, 2012, representatives of Underwriters advised Plaintiff's counsel that Underwriters was notified by GIA that a diamond matching the exact characteristics of the 3.08

Diamond had been turned in to GIA's Hong Kong Office for recertification. Plaintiff's counsel contacted GIA's counsel and requested that the 3.08 Diamond not be released pending further action by Underwriters or Plaintiff to recover the 3.08 Diamond. GIA's counsel requested a letter from Plaintiff asserting Plaintiff's ownership of the Memo Diamonds, including the 3.08 Diamond, which Plaintiff's counsel provided on August 21, 2012 to Underwriters' counsel and to GIA (attached as Exhibit C). GIA's counsel then requested a copy of a police report, which Plaintiff's counsel provided on August 22, 2012 (attached as Exhibit D).

As indicated above, on August 27, 2012, GIA identified the individual who submitted the 3.08 Diamond to GIA's Hong Kong office and advised Plaintiff that unless JKD resolved its claim to the diamond with YTK or "obtain[ed] a directive from law enforcement or an order from a court having jurisdiction over GIA directing GIA to hold the diamond or to deliver it to a third party, then GIA will consider returning the diamond to YTK..." (attached as Exhibit E). The 3.08 Diamond currently remains in the possession of GIA, at its Hong Kong office.

## ARGUMENT

## I.     THE STANDARD FOR A TEMPORARY RESTRAINING ORDER

To obtain preliminary injunctive relief, a plaintiff must demonstrate by a preponderance of the evidence that: (a) there is a likelihood of success on the merits; (2) the plaintiff will likely suffer irreparable injury absent an injunction; (3) the balance of hardships tips in favor of the plaintiff; and (4) the public interest would not be disserved by the issuance of a preliminary injunction. *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010); *see also U.S. Polo Ass'n Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011) (noting that the *Salinger* court "strongly suggested" that its standard for preliminary injunctions applied "in the context of any injunction, so long as Congress does not intend otherwise"). It is well established in the

Second Circuit that the standards for obtaining a temporary restraining order and a preliminary injunction are the same. *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). Each of the elements for the issuance of a temporary restraining order is satisfied here.

## II.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

### A.   Plaintiff Is Likely To Succeed on the Merits of its Declaratory Judgment Claim Against GIA and YTK

Plaintiff is likely to succeed on the merits of its claim for declaratory judgment that it is the rightful owner of the 3.08 Diamond.   Under New York law, a declaratory judgment is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).   Here, declaratory judgment is warranted because it will settle the legal relations in issue, determine JKD's rightful ownership of the 3.08 Diamond and whether YTK is liable for conversion with respect to the 3.08 Diamond.   Establishing rightful ownership is also necessary for determining to whom GIA should release the 3.08 Diamond.

Plaintiff will be able to demonstrate that it is the rightful owner of the 3.08 Diamond because it can show that the 3.08 carat diamond currently in GIA's possession is the very same diamond that was delivered to Olympic in June 2010 pursuant to the consignment agreement memorialized in Memo No. 342771.   Importantly, GIA, the very entity which originally certified the 3.08 Diamond and which is an expert in diamond grading and identification, is the same entity that notified Underwriters that it believed that the 3.08 Diamond had been submitted to its Hong Kong office.   Additionally, Plaintiff will show that the 3.08 Diamond was delivered to

Olympic solely for inspection and *possible* sale and that Plaintiff never consented to the sale of the 3.08 Diamond, nor issued an invoice nor received payment for the 3.08 Diamond.

**B.    Plaintiff Is likely To Succeed on the Merits of its Conversion Claim <u>Against YTK</u>**

Plaintiff is also likely to succeed on its conversion claim against YTK.  Under New York law, a conversion claim will succeed when (1) a plaintiff has legal ownership or immediate superior right of possession to certain property and (2) a defendant acts without authorization to interfere with plaintiff's ownership or possession of such property.  *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 253 (S.D.N.Y. 2002) (citing *Republic of Liberia v. Bickford*, 787 F. Supp. 397, 402 (S.D.N.Y. 1992)).

As explained above, Plaintiff has legal ownership of the 3.08 Diamond.  In delivering the 3.08 Diamond to Olympic, Plaintiff did not transfer ownership to Olympic and it never consented to its sale.  Plaintiff did not issue an invoice for the 3.08 Diamond nor receive payment for the 3.08 Diamond.  In addition, YTK has acted without authorization to interfere with Plaintiffs' ownership of the 3.08 Diamond.  By possessing the 3.08 Diamond and submitting it to GIA for recertification, YTK has prevented Plaintiff from possessing or transferring the same for Plaintiff's own benefit.

**III.    PLAINTIFF WILL SUFFER IRREPARABLE HARM IF GIA RELEASES THE <u>3.08 DIAMOND BEFORE OWNERSHIP IS DETERMINED</u>**

A temporary restraining order is necessary to prevent actual, imminent and irreparable harm to Plaintiff.  If GIA releases the 3.08 Diamond to YTK, it is likely to permanently pass out of Plaintiff's reach.   A finding of irreparable harm is appropriate where a plaintiff has demonstrated that the disputed property "could pass quickly out of the plaintiff's reach."  *N.Y Land Co. v. Republic of Philippines*, 634 F. Supp. 279, 288 (S.D.N.Y. 1986) (holding that

plaintiff had made strong showing of irreparable harm by demonstrating that if restraints on transfer of certain properties were dissolved, the properties could pass out of plaintiff's reach through secretive international transactions), *aff'd sub nom. Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986). In finding a likelihood of irreparable harm, the District Court in *N.Y. Land Co.* stated that, "[d]enial of a preliminary injunction would effectively deprive the [plaintiff] of any hope of protecting its claim to ownership of the Properties." *Id.*

In this case, where the property at issue is currently in a foreign nation and has been wrongfully taken from Plaintiff, it is particularly unlikely that Plaintiff will be able to recover the property once it leaves the premises of GIA. Additionally, the nature of the property at issue -- a relatively small, extremely expensive stone, which can be easily hidden and transported, decreases the chances that Plaintiff will be able to recover the 3.08 Diamond.

As the Second Circuit stated in *Republic of Philippines v. Marcos*, "preliminary injunctions are proper to prevent a defendant from making a judgment uncollectible, and '[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.'" 806 F.2d 344, 356 (2d Cir. 1986) (alteration in original) (quoting *De Beers Consol. Mines v. United Sates*, 325 U.S. 212, 220 (1945)). Here, the intermediate relief requested is of the "same character" as that which may be granted by a final judgment—the property that would be restrained is the very subject of the final judgment. If GIA is not restrained from releasing the 3.08 Diamond to YTK pending determination of ownership, then a judgment declaring Plaintiff the rightful owner of the 3.08 Diamond will have little effect, since Plaintiff will not be able to retrieve it.

8

## IV.   INJURY TO PLAINTIFF OUTWEIGHS ANY POSSIBLE HARM TO DEFENDANTS

The potential injury to Plaintiff significantly outweighs any possible harm to GIA or YTK. First, the 3.08 Diamond is currently in GIA's temporary possession for the sole purpose of recertification. There is no indication that GIA plans to assert any property rights over the 3.08 Diamond for itself. Therefore, any possible harm to GIA is extremely limited and substantially outweighed by the harm that would result to Plaintiff if the 3.08 Diamond was released to YTK and passed out of Plaintiff's reach.

Additionally, any potential injury to YTK is minimal when compared to the possible harm to Plaintiff. While rightful ownership of the 3.08 Diamond is being determined by the Court, the 3.08 Diamond will remain in the secure facilities of GIA. However, if the 3.08 Diamond is released, there will be no method to track its location and it is virtually assured to pass out of Plaintiff's reach. In a similar case, where defendants moved to vacate a temporary restraining order enjoining them from transferring certain properties, the court held that the cost of restraint to the defendants were "slight in comparison with the hardship that plaintiff would suffer from dissolution of the restraints." *N.Y. Land Co.*, 634 F. Supp. at 288-89.

## V.   A TEMPORARY RESTRAINING ORDER WILL SERVE THE PUBLIC INTEREST

Finally, a temporary restraining order enjoining GIA from releasing the 3.08 Diamond to YTK will serve the public interest. It is in the public's interest for diamonds and other precious stones to be transferred in a legal, documented, transparent market. However, if the 3.08 Diamond is released to YTK, it is likely to enter an underground, illegal trade in diamonds, which is prevalent throughout Asia and may have been the source from which YTK obtained

possession of the 3.08 Diamond.[2]  Alternatively, if the 3.08 Diamond remains with GIA pending the outcome of ownership determination, it will remain within the confines of the legal, documented diamond market.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's request for a temporary restraining order to enjoin GIA from releasing the 3.08 Diamond to YTK pending determination as to its true ownership.

Dated: August 28, 2012

Respectfully submitted,

By:

Jerome J. Lawton
Skadden, Arps, Slate, Meagher & Flom
Four Times Square
New York, New York 10036
Telephone:  (212) 735-2982
Fax:  (917) 777-2982
Attorneys for Plaintiff

---

[2]  *See e.g., China Sentences 9 Indian Traders for Smuggling Diamonds, 13 to be Deported*, FirstPost (Dec. 7, 2011), http://www.firstpost.com/world/china-sentences-9-indian-traders-for-smuggling-diamonds-13-to-be-deported-150361.html (last visited Aug. 26, 2012).

924093-New York Server 3A - MSW