UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**12 MISC 00290**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Julius Klein Diamonds, LLC;

                            Plaintiff,

             - against -

Gemological Institute of America, Inc.;
and Tat Keung Yee;

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CASE NO.:

## DECLARATION OF JEROME J. LAWTON

I, Jerome J. Lawton, declare and state as follows:

1.      I am a counsel at the law firm of Skadden, Arps, Slate, Meagher & Flom, LLP, in New York, NY. I am duly licensed to practice before the courts of the State of New York. I am counsel for Plaintiff in the captioned matter and make this declaration in Support of Plaintiff's Application for Temporary Restraining Order. I make this declaration based on my own personal knowledge, and if called upon to do so, I could and would testify competently thereto.

2.      In June 2010, Plaintiff, a New York limited liability company, delivered four diamonds (the "Memo Diamonds") to Olympic Diamonds Corp. ("Olympic"), a New York corporation, for inspection and possible sale.

3.       The Memo Diamonds were delivered to Olympic pursuant to three consignment agreements (each a "Memo" and collectively, the "Memos"), as follows:

      (a)       <u>Memo No. 343246</u>: dated June 15, 2010, for one 7.98 carat stone totaling $189,604.80;

      (b)       <u>Memo No. 342771</u>: dated June 2, 2010, for one 3.18 carat stone and one 3.08 carat stone, totaling $473,256.00; and

      (c)       <u>Memo No. 343982</u>: dated June 27, 2010, for one 3.15 carat stone, totaling $55,755.00.

4.       True and correct copies of the Memos are attached hereto as Exhibit A.

5.       Each of the Memo Diamonds was certified by GIA, a nonprofit corporation incorporated in California with a management office and laboratory in New York, that specializes in analyzing, grading and identifying diamonds and other gemstones.  When GIA grades a diamond, it issues a certificate number that remains in its database.

6.       The GIA certificate number for each of the Memo Diamonds is listed on its respective Memo.  The GIA certificate number for the 3.08 carat diamond listed in Memo No. 342771 (the "3.08 Diamond") is 1112901343.

7.       Each of the Memo Diamonds was covered by an insurance policy – the Jewellers Block Policy No. B0799NJ100490d (the "Policy") issued by Lonmar Global Risks (the "Underwriters").  The Policy covered the Memo Diamonds world-wide in case of loss.

8.       A true and correct copy of the Policy is attached hereto as Exhibit B.

9.       After inspection, Olympic was to promptly contact JKD with any offer to buy the Memo Diamonds or return the Memo Diamonds to JKD.

10.     Olympic gave JKD a check in the amount of each Memo, which JKD was to hold and deposit only if JKD received an acceptable offer from Olympic and agreed to a sale of any of the Memo Diamonds and issued an invoice for the respective Memo Diamond(s).

11.     After approximately 30 days from the issuance of the first consignment agreement, on or about July 1, 2010, Olympic had not contacted JKD with an offer to buy any of the Memo Diamonds and JKD demanded their return.  At no time did JKD consent to the sale of any of the Memo Diamonds or issue any invoice to Olympic or deposit any of its checks.

12.     JKD was subsequently informed that Olympic had delivered at least three of the Memo Diamonds to Ten Plus Ltd. ("Ten Plus"), a Hong Kong jewelry company, for inspection and possible sale.  JKD demanded that the Memo Diamonds be returned immediately.  Shortly thereafter, Olympic returned one of the Memo Diamonds (the diamond referenced in Memo No. 343982), but advised JKD that it appeared that the three remaining Memo Diamonds, including the 3.08 Diamond, had been wrongfully disposed of by a Ten Plus employee and were lost.

13.     JKD immediately filed a claim under the Policy with its Underwriters' insurance representative in July 2010.  Although JKD's claim for the loss was made over two years ago, payment from Underwriters has been delayed by Underwriters' claims of an ongoing investigation.

14.     Soon after the disappearance of three of the Memo Diamonds, Ten Plus was the subject of a liquidation proceeding in Hong Kong and none of the three missing Memo Diamonds were ever found or accounted for.

15.     On August 20, 2012, representatives of Underwriters notified me, as Plaintiff's counsel, that Underwriters was notified by GIA that a diamond matching the exact description of the 3.08 Diamond had been turned in to GIA's Hong Kong facility for recertification.  I contacted

3

GIA's counsel and requested that the 3.08 Diamond not be released pending further action by Underwriters or Plaintiff to recover the 3.08 Diamond. GIA's counsel requested a letter from Plaintiff asserting Plaintiff's ownership of the Memo Diamonds, including the 3.08 Diamond, which I provided on August 21, 2012 to Underwriters' counsel and to GIA.

16.     A true and correct copy of the August 21, 2012 letter is attached hereto as Exhibit C.

17.     GIA's counsel then requested a copy of a police report, which I provided on August 22, 2012.

18.     A true and correct copy of the police report is attached hereto as Exhibit D.

19.     On August 27, 2012, GIA identified the individual who submitted the 3.08 Diamond to GIA's Hong Kong office as Mr. Tat Keung Yee ("YTK") and advised Plaintiff by letter that unless JKD resolved its claim to the diamond with YTK or "obtain[ed] a directive from law enforcement or an order from a court having jurisdiction over GIA directing GIA to hold the diamond or to deliver it to a third party, then GIA will consider returning the diamond to YTK..."

20.     A true and correct copy of the August 27, 2012 letter is attached hereto as Exhibit E.

21.     The 3.08 Diamond currently remains in the possession of GIA, at its Hong Kong facility.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated: August 28, 2012

By: _____

Jerome J. Lawton
Skadden, Arps, Slate, Meagher & Flom
Four Times Square
New York, New York 10036
Telephone:  (212) 735-2982
Fax:  (917) 777-2982
Attorneys for Plaintiff

5

# Exhibit A

ec 19 10 12:02a      Lawton                                    9149214100                   p.36



## MEMORANDUM

| Memo No. | Date | Cust Acct. No. | |
|---|---|---|---|
| 343266 | 06/15/10 | 254 | HS |

Julius Klein Diamonds, LLC

50 West 47th Street • 9th Floor • New York, NY 10036
Tel (212) 719-1811 (800) 684-0919 • Fax (212) 921-1769

CONSIGNED TO:

OLYMPIC DIAMOND CORP.
580 FIFTH AVENUE
SUITE 1200
NEW YORK NY 10036
NISSAN DAVID

SHIPPED TO:

OLYMPIC DIAMOND CORP.
580 FIFTH AVENUE
SUITE 1200
NEW YORK NY 10036
(212) 382-3888

| Lot No. | Stones | Carats | Description | Prod Per Carat | Total |
|---|---|---|---|---|---|
| b70-69626 | 1 | 7.98 | BR I VS2 1112990668 | 23760.00 | 189604.80 |

ALL RETURN SHIPMENTS MUST INCLUDE A PACKING LIST.

| | | | TOTAL FOR MEMO: | 1 | 7.98 | | 189604.80 |

GOODS ACCEPTED SUBJECT TO CONDITIONS EXPRESSED ON REVERSE SIDE
ALL RETURN SHIPMENTS MUST INCLUDE A PACKING LIST.



## MEMORANDUM

| Memo No. | Date | Cust. Acct. No. | |
|---|---|---|---|
| 342771 | 06/08/10 | 254 | HS |

Julius Klein Diamonds, LLC

50 West 47th Street • 9th Floor • New York, NY 10036
Tel (212) 719-1811 (800) 684-0919 • Fax (212) 921-1769

CONSIGNED TO:

OLYMPIC DIAMOND CORP.
580 FIFTH AVENUE
SUITE 1200
NEW YORK NY 10036
NISSAN DAVID

SHIPPED TO:

OLYMPIC DIAMOND CORP.
580 FIFTH AVENUE
SUITE 1200
NEW YORK NY 10036
(212) 382-3888

| Lot No. | Stones | Carats | Description | Price Per Carat | Total |
|---|---|---|---|---|---|
| b30-69957 | 1 | 3.18 | BR D F 14914805 | 75600.00 | 240408.00 |
| b30-69955 | 1 | 3.08 | BR D F 1112901343 | 75600.00 | 232848.00 |

ALL RETURN SHIPMENTS MUST INCLUDE A PACKING LIST.

| | | | TOTAL FOR MEMO: | 2 | 6.26 | | 473256.00 |

GOODS ACCEPTED SUBJECT TO CONDITIONS EXPRESSED ON REVERSE SIDE.

The merchandise described on the reverse side of this Memorandum (the "Merchandise") is delivered to you on consignment and by acceptance thereof you expressly agree to the terms hereof. You hereby acknowledge and agree that this Memorandum confirms the consignment and the right of Julius Klein Diamonds, LLC ("JKD") to file a Financing Statement pursuant to the Uniform Commercial Code covering the Merchandise and the proceeds thereof. You agree to immediately notify JKD in the event of any name change or change in state of incorporation.

No sale of the Merchandise shall be made without the prior consent of JKD. You agree to keep the Merchandise and the proceeds from any sale of the Merchandise separately identifiable and will not commingle same. In the event of a sale by you, after receipt of consent from JKD, of the Merchandise, or any portion thereof, you agree that you will promptly remit to JKD the amount indicated on the reverse side of this Memorandum as representing the value or cost thereof (or such other sum as has been specifically agreed to by JKD in writing).

You agree that upon demand of JKD you will immediately return the Merchandise to JKD at your cost and expense, including freight and insurance. You agree to assume all risk of loss or damage to the Merchandise regardless of cause until same has been returned to JKD without damage.

You agree to indemnify and hold harmless JKD from and against any and all losses, damages, costs and expenses incurred by JKD as a result of your failure to return or pay for the Merchandise as set forth herein, including, without limitation, reasonable attorney's fees.

The terms of this Memorandum cannot be modified or amended except in a writing signed by JKD. In the event that a separate Consignment Agreement is executed by you in favor of JKD, the terms and conditions of same shall control in the event of any inconsistencies.

JKD warrants that any diamonds covered by this Memorandum have been provided in accordance with the DTC Best Practice Principles. For any product fabricated from rough diamonds mined from January 1, 2003 onward, JKD warrants that the diamonds have been purchased from legitimate sources not involved in funding conflict and are in compliance with United Nations Resolutions. JKD guarantees that the diamonds are conflict free based on personal knowledge and/or written guarantees from the supplier of the diamonds to JKD. For any products fabricated from rough diamonds mined prior to January 1, 2003, JKD warrants that conflict diamonds will not be knowingly sold by it and that, to the best of its ability, it will undertake reasonable measures to help prevent the sale of conflict diamonds by it in this country.

The merchandise described on the reverse side of this Memorandum (the "Merchandise") is delivered to you on consignment and by acceptance thereof you expressly agree to the terms hereof. You hereby acknowledge and agree that this Memorandum confirms the consignment and the right of Julius Klein Diamonds, LLC ("JKD") to file a Financing Statement pursuant to the Uniform Commercial Code covering the Merchandise and the proceeds thereof. You agree to immediately notify JKD in the event of any name change or change in state of incorporation.

No sale of the Merchandise shall be made without the prior consent of JKD. You agree to keep the Merchandise and the proceeds from any sale of the Merchandise separately identifiable and will not commingle same. In the event of a sale by you, after receipt of consent from JKD, of the Merchandise, or any portion thereof, you agree that you will promptly remit to JKD the amount indicated on the reverse side of this Memorandum as representing the value or cost thereof (or such other sum as has been specifically agreed to by JKD in writing).

You agree that upon demand of JKD you will immediately return the Merchandise to JKD at your cost and expense, including freight and insurance. You agree to assume all risk of loss or damage to the Merchandise regardless of cause until same has been returned to JKD without damage.

You agree to indemnify and hold harmless JKD from and against any and all losses, damages, costs and expenses incurred by JKD as a result of your failure to return or pay for the Merchandise as set forth herein, including, without limitation, reasonable attorney's fees.

The terms of this Memorandum cannot be modified or amended except in a writing signed by JKD. In the event that a separate Consignment Agreement is executed by you in favor of JKD, the terms and conditions of same shall control in the event of any inconsistencies.

JKD warrants that any diamonds covered by this Memorandum have been provided in accordance with the DTC Best Practice Principles. For any product fabricated from rough diamonds mined from January 1, 2003 onward, JKD warrants that the diamonds have been purchased from legitimate sources not involved in funding conflict and are in compliance with United Nations Resolutions. JKD guarantees that the diamonds are conflict free based on personal knowledge and/or written guarantees from the supplier of the diamonds to JKD. For any products fabricated from rough diamonds mined prior to January 1, 2003, JKD warrants that conflict diamonds will not be knowingly sold by it and that, to the best of its ability, it will undertake reasonable measures to help prevent the sale of conflict diamonds by it in this country.



*Julius Klein Diamonds, LLC*

80 West 47th Street • 9th Floor • New York, NY 10036
Tel (212) 719-1811 (800) 334-0919 • Fax (212) 921-1769

**MEMORANDUM**

| Memo No. | Date | Cust. Acct. No. | |
|---|---|---|---|
| 343982 | 06/27/10 | 254 | HS |

CONSIGNED TO:

OLYMPIC DIAMOND CORP.
580 FIFTH AVENUE
SUITE 1200
NEW YORK NY 10036
NISSAN DAVID

SHIPPED TO:

OLYMPIC DIAMOND CORP.
580 FIFTH AVENUE
SUITE 1200
NEW YORK NY 10036
(212) 382-3888

| Lot No. | Stones | Carats | Description | Price Per Carat | Total |
|---|---|---|---|---|---|
| 550-22160 | 1 | 3.15 | AS GVVS2 210543990 7/4/10 | 17700.00 | 55755.00 |

TOTAL FOR MEMO: 1     3.15     55755.00

GOODS ACCEPTED SUBJECT TO CONDITIONS EXPRESSED ON REVERSE SIDE
ALL RETURN SHIPMENTS MUST INCLUDE A PACKING LIST.

# Exhibit B

Unique Market Reference:

# B0799NJ100490d

## RISK DETAILS

| | |
|---|---|
| **Type:** | Jewellers Block |
| **Insured:** | LLD Group<br>and/or specified companies and/or affiliated and/or associated and/or subsidiary companies as may now or hereafter be formed, for their respective rights and interest and/or as they may appear and as per schedule |
| **Principal Address:** | Naom Building, Diamond Exchange Complex, Tel Aviv, Israel |
| **Period:** | From 1st June 2010 to the 31st May 2011 Both Days Inclusive at Local Standard Israeli Time |
| **Interest:** | SECTION 1 |

Valuables, defined as "Stock" including other people's goods, including jewellery, diamonds, precious stones of any sort whatsoever, metals, gold or silver or ornaments or plate, pearls and/or merchandise and material usual to the conduct of the Insured's business, cash and cheques whether the same be the property of the Insured or entrusted to them.

Property which the Insured has undertaken to effect insurance may be covered with the prior agreement of insurers.

SECTION 2

Trade and office furniture, fixtures and fittings, machinery and plant, (including air conditioning and close circuit television) safes and alarm system, tenant's decorations and improvements and all other contents of the property of the Insured excepting only Valuables as defined in current Contract wording.

| | |
|---|---|
| **Limit of Liability:** | USD 20,000,000 and as per schedule attached. |
| **Deductible:** | USD 25,000 any one loss or series of losses arising out of the same event, reducing to; |

Nil in respect of sendings and furniture, fixtures and fittings losses.

<u>In respect of Julius Klein only and in addition to the above</u>

USD 5,000 any one loss or series of losses arising out of the same event in relation to goods valued up to USD 100,000 on entrustment to brokers in the DEC only

| | |
|---|---|
| **Situation:** | The Valuables insured hereon are covered whilst anywhere in the world in transit or at rest. |

Losses occurring in transit shall be deemed to occur on the date of dispatch.

| | |
|---|---|
| **Conditions:** | As per wording attached. |
| **Subjectivities:** | It is understood and agreed that with effect from 1st September 2010 the ENTRUSTMENT MANAGEMENT CLAUSE as held on file with LONMAR Global Risks Limited will be endorsed onto this contract. |

Unique Market Reference:
B0799NJ100490d

**Choice of Law
& Jurisdiction:**

IN RESPECT OF USA LOCATIONS ONLY

Choice of Law:

It is hereby understood and agreed that the proper and exclusive law of this insurance shall be New York.

Choice of Jurisdiction:

Service Of Suit Clause (U.S.A.)

This Service of Suit Clause will not be read to conflict with or override the obligations of the parties to arbitrate their disputes as provided for in any Arbitration provision within this Policy. This Clause is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to such Arbitration provision for resolving disputes arising out of this contract of insurance (or reinsurance).

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon Mendes and Mount, Citicorp Plaza, 725 South Figueroa Street, Los Angeles, California, U.S.A. for Insured's located in California and Mendes and Mount, 750 7th Avenue, New York, N.Y. 10019/6829, U.S.A. for Insured's located outside California, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Unique Market Reference:
B0799NJ100490d

14/09/2005
LMA5020
Form approved by Lloyd's Market Association

## IN RESPECT OF ALL OTHER LOCATIONS

### Service of Suit Clause (Israel)

This insurance shall be governed by Israeli law and the Israeli Courts shall have jurisdiction in any dispute arising hereunder.

In this event Mr. Jonathan Gross, Gabor Sport Building, 7 Menachem Begin Road, Ramat Gan 52521, Israel, Lloyd's Representative in Israel, is authorised to accept service of suit on behalf of insurers.

1/1/98
NMA2349

| | |
|---|---|
| **Premium:** | USD 2,345,000 adjustable on expiry at the following rates: |

| Method of Sending (and as further defined under Sendings Limits) | Adjustable Rate |
|---|---|
| Armoured car and /or controlled airfreight couriers | 0.0575% |
| Armoured car and /or controlled airfreight couriers (internal US only) | 0.04% |
| Armoured car and /or controlled airfreight couriers (Contingent Coverage) *(Full value declared to carriers)* | 0.02% |
| DTC Sight Shipments | 0.0175% |
| Personal Conveyance | 0.0575% |
| Personal Conveyance within Moscow *(Government offices to plant)* | 0.0325% |
| Registered Mail and/or Registered Airmail | 0.2% |
| Overnight Courier *(Federal Express and/or UPS and/or similar carrier)* | 0.575% |
| Overnight Courier Secure Service *(Federal Express DVX service and/or Malca Amit Express and/or similar carrier)* | 0.2875% |

| | |
|---|---|
| **Premium Payment Terms:** | 60 days LSW 3001 (60 days) but 30 days where prompt payment discount is applicable |

### PREMIUM PAYMENT CLAUSE

Notwithstanding any provision to the contrary within this contract or any endorsement hereto, in respect of non payment of premium only the following clause will apply.

Unique Market Reference:
B0799NJ100490d

The Re(Insured) undertakes that premium will be paid in full to (Re)Insurers within 30 days of inception of this contract (or, in respect of instalment premiums, when due).

If the premium due under this contract has not been so paid to (Re)Insurers by the 30th day from the inception of this contract (and, in respect of instalment premiums, by the date they are due) (Re)Insurers shall have the right to cancel this contract by notifying the (Re)Insured via the broker in writing.  In the event of cancellation, premium is due to (Re)Insurers on a pro rata basis for the period that (Re)Insurers are on risk but the full contract premium shall be payable to (Re)Insurers in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this contract.

It is agreed that (Re)Insurers shall give not less than 15 days prior notice of cancellation to the (Re)Insured via the broker.  If premium due is paid in full to (Re)Insurers before the notice period expires, notice of cancellation shall automatically be revoked.  If not, the contract shall automatically terminate at the end of the notice period.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

LSW3001
30/9/08

*Or as agreed in respect of certain offslips*

**Taxes payable by the Insured and administered by Insurers:**

Belgium Tax

Premium Tax USD 3,793 calculated on USD 41,007 (Gross static premium) at a rate of 9.25% tax

Premium Tax (goods in transit) USD 85 calculated on USD 6,091 (gross premium) at a rate of tax 1.40% tax

National Institute for Health and Disability (INAMI) USD 267 calculated on USD 4,101 (gross Premium) at a rate of 6.5% tax

Swiss Tax

Stamp Duty of USD 125 calculated on USD 2,499 (gross premium) at a rate of 5% tax

Insurance Premium tax UK

IPT USD 6,268 calculated on USD 125,360 (gross Premium) at a rate of 5% tax

Italian Tax

Premium Tax:

Unique Market Reference:
B0799NJ100490d

Static risk:- tax of USD 4,452 calculated on USD 20,008 (gross premium) at a rate of 22.25% tax

Transit risk:- tax of USD 269 calculated on USD 2,155 (gross premium) at a rate of 12.50%

**Insurer Contract Documentation:** This document details the contract terms entered into by the insurer(s), and constitutes the contract document. The contract change document(s) signed by the insurer(s) shall form the evidence of the changes agreed.

LONMAR Global risks are hereon authorised to issue cover notes to individual trading companies using the attached wording as far as applicable

## INFORMATION

**Information:** As agreed by Underwriters and held on file with LONMAR Global Risks Limited

Trigger points within the ENTRUSTMENT MANAGEMENT CLAUSE to be negotiated for each off slip separately.

Unique Market Reference:
B0799NJ100490d

## SCHEDULE

**PREMISES (Limits expressed as any one loss or series of losses arising out of one event)**

| | INSURED | ADDRESS | LIMIT |
|---|---|---|---|
| 1 | LLD Israel | Naom Building, Diamond Exchange Complex, Tel Aviv, Israel | SECTION 1 USD 20,000,000<br><br>SECTION 2 NIL |
| 2 | LLD USA LLC and/or Ruis Diamonds LLC | 580 Fifth Avenue, Suite 800, New York, NY 10036, USA | SECTION 1 USD 20,000,000<br><br>SECTION 2 NIL |
| 3 | Ruiss Diamonds | 5 Nagatinskaya Street, 115533 Moscow, Russia | SECTION 1 USD 20,000,000<br><br>SECTION 2 NIL |
| 4 | LDZ | Diamond Exchange Complex, Ramat Gan, Israel | SECTION 1 USD 7,000,000<br><br>SECTION 2 NIL |
| 5 | Equity Diamond Cutting Works | 2nd Floor, Equity House, 31 Delvers Street, Johannesburg, South Africa | SECTION 1 USD 3,500,000<br><br>SECTION 2 USD 1,000,000 |
| 6 | LLD (Asia) Ltd and/or MYL Corporation Ltd | 27/F No.8 Queens Road Central, Hong Kong | SECTION 1 USD20,000,000<br><br>SECTION 2 NIL |
| 7 | LLD Dubai | | SECTION 1 USD 4,200,000<br><br>SECTION 2 NIL |
| 8 | LLD NAMIBIA | 7 Ruhr Street, Northern Industrial Area, Windhoeck, Namibia | SESCTION 1 USD 3,000,000<br><br>SECTION 2 NIL |

Unique Market Reference:
B0799NJ100490d

| 9 | LLD Diamonds (Private) Ltd. | 1103 Prasad Chambers, Opera House, Mumbai, India | SECTION 1 USD 3,000,000 SECTION 2 NIL |
|---|---|---|---|
| 10 | BGA Diamonds Ltd | Hovenierstraat 21, 1st Floor, 2018 Antwerp, Belgium | SECTION 1 USD 10,000,000 SECTION 2 NIL |
| 11 | Angola Polishing Diamonds SA | Luanda, Angola | SECTION 1 USD 20,000,000 SECTION 2 NIL |
| 12 | Yaalom Trading Ltd | Room D 4-27.6/4-27.8, Port Franc La Praille, 6 Rte du Grand Lancy, 1211, Geneva, Switzerland | SECTION 1 USD 20,000,000 SECTION 2 NIL |
| 13 | B.G.E.L Europe BVBA | 78, Pelikaanstraat, Antwerp, Belgium | SECTION 1 USD 12,000,000 SECTION 2 NIL |
| 14 | LLD Arel SRL | Corso Garibaldi 107, Valenza, Italy | SECTION 1 USD 8,500,000 SECTION 2 NIL |
| 15 | Taly Diamonds Inc. | 580 Fifth Avenue, Room 915, 9th Floor, New York, NY 10036, USA | SECTION 1 USD 20,000,000 SECTION 2 NIL |
| 16 | Taly Diamonds Inc | Suite 972, the Diamond Tower, DEC, Ramat Gan, Israel | SECTION 1 USD 6,000,000 SECTION 2 NIL |
| 17 | Elefant Diamonds Inc. | 576 Fifth Avenue, Suite 1001, New York, NY 10036, USA | SECTION 1 USD 20,000,000 SECTION 2 NIL |
| 18 | Carl K. Gumpert | 607 South Hill Street, Suite 310, Los Angeles 90014, U.S.A. | SECTION 1 USD 20,000,000 SECTION 2 USD 250,000 |

Unique Market Reference:
B0799NJ100490d

| 19 | Carl K. Gumpert | 580 5ᵗʰ Avenue, 7ᵗʰ Floor, Suite # 717, New York, U.S.A. | SECTION 1 USD 10,000,000<br><br>SECTION 2 USD 50,000 |
|----|-----------------|---------|----------|
| 20 | Norman Silverman | 606 South Olive Street, Ste#2450, Los Angeles, Ca 90014 U.S.A. | SECTION 1 USD 20,000,000<br><br>SECTION 2 NIL |
| 21 | KLG Jewelry | 700 Madison Avenue, New York, USA | SECTION 1 USD 20,000,000<br><br>SECTION 2 NIL |
| 22 | KLG Jewelry (Including LLDZ as an operating company form same address) | New Bond Street, London UK | SECTION 1 USD 20,000,000<br><br>SECTION 2 NIL |
| 23 | KLG Jewelry | Moscow (opening circa May 2008) | SECTION 1 USD 20,000,000<br><br>SECTION 2 NIL |
| 24 | Julius Klein – Eliaz Diamonds Ltd | Maccabi Building, DEC, Israel | SECTION 1 USD 20,000,000<br><br>SECTION 2 USD 500,000 |
| 25 | Julius Klein Diamonds LLC and/or Sunrise Venture LLC and/or Elia Diamond Co and/or Ideal Diamond Co and/or Diamondking USA Corp | 20 West 47ᵗʰ Street, new York City, New York, 10036 USA | SECTION 1 USD 20,000,000<br><br>SECTION 2 NIL |
| 26 | JKD West LLC doing business as Prestige Diamond Co | 9601 Wilshire Blvd, Beverly Hills, CA | SECTION 1 USD 15,000,000<br><br>SECTION 2 NIL |

Unique Market Reference:
B0799NJ100490d

| 27 | Ritani LLC | 2 West 45ᵗʰ Street, New York City, New York, 10036, USA | SECTION 1 USD 6,000,000<br><br>SECTION 2 NIL |
|----|-----------|-----------------------------------|------------------------|
| 28 | Julius Klein Diamonds SA | Rock Heights Building, corner of Rockey and heights Street, Doornfontein, 2028, Johannesburg, South Africa | SECTION 1 USD 10,000,000<br><br>Section 2 NIL |
| 29 | Julius Klein – Eliaz Diamonds Asia Limited | Winway Building, 50 Wellington Street, Hong Kong | SECTION 1 USD 20,000,000<br><br>SECTION 2 NIL |
| 30 | Julius Klein Namibia | Namibia | SECTION 1 USD 8,000,000<br><br>SECTION 2 NIL |

**SENDINGS**

USD 3,000,000 any one shipment by Registered Mail and/or Registered Airmail

USD 3,000,000 any one shipment by Airfreight Valuable Cargo, subject to the nominal amount being declared to the airline.

USD 20,000,000 any one shipment by Brink's and/or Malca Amit and/or G4S International and/or DTC Sight Shipments and /or Lemuir Express and/or Loomis Armoured and/or Purolator Courier Service and/or Wells Fargo and/or KandS Armoured Courier and/or Steward Armoured Car and/or Vets International Armoured Car and/or and/or Dunbar and or Forward Air and/or Ram International and/or Air Courier International and/or Servicion Pan Americano De Proteccion S.A. De C.V. and/or Spezsviaz / C.C.C.B. and/or any other similar armoured car and/or controlled airfreight courier and/or their associated and/or affiliated companies. Value declared to these carrier(s) may be no and/or partial and/or full value declared

USD 20,000,000 any one Personal Conveyance

USD 100,000 any one parcel by Federal Express and/or ONE Service and/or UPS and/or Express Mail Services and/or AIB Express and/or Malca Amit Express and/or Brink's Federal Express and/or Federal Express DVX Service and/or Airborne Express and/or DHL and/or AIB Express / Roadway Parcel Express and/or Global Express and/or any other similar common carrier

USD 250,000 any one parcel by Madcar Company Inc.

**THIRD PARTY INFIDELITY**

USD 5,000,000 any one entrustee.

It is hereby understood and agreed that the above limit is any one loss and shall mean any loss or losses perpetrated by the same person or persons for the purposes of application of deductible and limit.

Unique Market Reference:
B0799NJ100490d

## JEWELLER'S BLOCK WORDING

### RISKS COVERED

SECTION 1

The said Interest is covered against All Risks of Physical Loss or Damage of whatsoever nature, except as provided for hereinafter, occurring during the Period of Insurance and within the Territorial Limits and subject to the conditions, clauses and limitations as set forth below.

SECTION 2

The said Interest is covered against loss or damage by fire, lightning, explosion, aircraft, or other aerial devices or articles dropped therefrom, burglary, theft or any attempt thereat, storm, tempest, flood, bursting or overflowing or leakage of water pipes or apparatus, or impact by any road vehicle, horse or cattle not belonging to or under the control of the Insured or any member of the Insured's household or the Insured's employees occurring during the Period of Insurance (subject to the terms, conditions and limitations of this insurance).

It is agreed that within the limit of the sum insured under this Section this Contract covers architects', surveyors', legal and other fees necessarily incurred by the Insured in the reinstatement of the property insured following upon its destruction or damage by any peril hereby insured against (but not any fees for the preparation of a claim or estimate of loss) not exceeding the amounts authorized under the Scales of the various institutions regulating such charges prevailing at the time of the destruction or damage.

The premises at which the Insured's business is carried on and/or landlord's fixtures and fittings thereof, the Insured's own or for which the Insured is legally responsible as tenant, against damage (other than by fire) done by burglars and/or thieves or persons attempting to commit burglary or theft.

### EXCLUSIONS

APPLICABLE TO SECTIONS 1 AND 2

This Insurance does not cover: -

1. Damage to Valuables which may be sustained whilst they are being worked upon and directly and/or indirectly resulting therefrom.

2. Theft or disappearance of Valuables of or from road vehicles of every description owned by or under the control of the Insured and/or his or their servants or agents or representatives when such vehicles are left unattended.

3. War and Civil War Exclusion Clause (NMA 464)

   Notwithstanding anything to the contrary contained herein this Contract does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

Unique Market Reference:
B0799NJ100490d

4.  Terrorism Exclusion Endorsement (NMA2920)

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Insurers allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Insured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

5.  Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusion Clause (CL370)

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1.  In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

1.1  Ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel.

1.2  the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

1.3  any weapon or devise employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force matter

1.4  the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes

1.5  any chemical, biological, bio-chemical, or electromagnetic weapon.

Unique Market Reference:
B0799NJ100490d

6.   Institute Cyber Attack Clause (CL380)

> 1.1  Subject only to clause 1.2 below, in no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus or process or any other electronic system.

> 1.2  Where this clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, Clause 1.1 shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

7.   Kimberley Process Exclusion Clause

This insurance excludes and loss, damage, cost or expense whatsoever nature directly or indirectly arising from confiscation or seizure as a result of non-compliance with, or any breach of the requirements of the Kimberley Process Certification Scheme.

If the insurers allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the insured.

8.   Insolvency Exclusion

Loss arising directly from the Insolvency, Administration, Voluntary Arrangements with Creditors, Bankruptcy, Receivership, or the inability to fulfil the debt obligations or financial default of:

(i)    The Assured

(ii)   Any Third Party to whom the Insured Interest has been entrusted

Notwithstanding the above it is specifically noted and agreed that this Exclusion shall not apply in the event of physical loss or damage following Insolvency, Administration, Voluntary Arrangements with Creditors, Bankruptcy or Receivership of any Third Party to whom the Assured has entrusted Insured Interest for processing or otherwise where such Third Party is holding the Insured Interest on an allocated basis and the principle of allocation is recognised under a local law applicable to such Third Party.

## APPLICABLE TO SECTION 2 ONLY (IN ADDITION TO THE ABOVE)

This Insurance does not cover: -

1.   Wear, tear and gradual deterioration

Unique Market Reference:
B0799NJ100490d

**THIS CONTRACT IS SUBJECT TO THE FOLLOWING CLAUSES: -**

**1) BASIS OF VALUATION**

It is agreed that the basis of valuation hereon is: -

SECTION 1

| | |
|---|---|
| Rough Diamonds - | Cost Price as reflected in Insured's books after sorting plus 10%, but any "DTC" price increase within 14 days of loss will be taken into account in respect of any goods not yet purchased by the Insured. Plus Taxes/VAT as applicable. |
| Polished Diamonds - | According to Selling Price List of the Insured. |
| Goods given on Approval to the Insured - | Approval Price plus Taxes/VAT as applicable. |
| Goods sold but not Delivered | Selling price plus costs incurred |
| Jewellery - | Cost price plus 20% plus taxes/levy as applicable. |

SECTION 2

Furniture, Fixtures and Fittings - Valued at Replacement value at date of loss.

**2) WAIVER OF RECOURSE**

It is hereby noted that Insurers agree to waive all rights of recourse against Banks, Security Companies, Professional Couriers (not including Brinks and Malca Amit).

**3) PROFIT SHARING CLAUSE**

It is agreed that, upon expiry, the following Profit Sharing will be allowed: -

1.  From the premium paid shall be deducted 30% for Insurers expenses.

2.  From the resultant figure shall be deducted all claims paid or outstanding.

3.  10% of the resultant balance, if any, shall be allowed as a Profit Commission hereunder.

Profit Commission will be adjusted at a later date to take account of (a) the settlement amount on outstanding claims and (b) the settlement of any additional claims.

When there is a deficit balance in any Contract year, the amount of the deficit arrived at in accordance with the foregoing provisions shall be carried forward and set off against the resulting figures for the following two Contract years. After that, any outstanding deficit balance will be cancelled and profit commission will be computed in the normal manner.

The assessment of any Profit Sharing, as provided for in the Clause, shall be calculated separately in respect of Claims settled under this Contract for: -

1.  Sendings

Unique Market Reference:
B0799NJ100490d

2.     Other perils

Without prejudice one for the other.

The attributable premium for 1 and 2 above, as agreed leading insurers.

It is noted and agreed that the above profit Commission is only redeemable subject to the renewal of this policy being renewed with existing insurers

## 4) CANCELLATION CLAUSE

This Contract may be cancelled at any time at the request of the insured in writing to the Brokers who effected the insurance, and the premium hereon shall be adjusted on the basis of the insurers receiving or retaining the customary short term premium and/or as agreed by insurers at the time of cancellation.

This Contract may also be cancelled by or on behalf of the insurers by sixty days notice given in writing to the insured at his last known address, and the premium hereon shall be adjusted on the basis of the insurers receiving or retaining pro rata premium.

Notice shall be deemed to be duly received in the course of post if sent by pre-paid letter post properly addressed.

Notwithstanding anything contained herein to the contrary the War, Strikes, Riots and Civil Commotion and Confiscation and Expropriation Risks Cover provided by clause 13 shall be subject to seven days Notice of Cancellation. As regards sendings to and from United States of America, Strikes Risks are subject to 48 hours Notice of Cancellation for risks that have not attached.

## 5) CLAIM SETTLEMENT CLAUSE

Losses in respect of Sendings:

If by reason of casualty it is evident that the insured interest is a total loss, the insured value is to be paid within 14 days of acceptance of evidence of loss by insurers.

In the event of non-arrival within 30 days of proved sending date, it is agreed to advance hereunder the interest value as a loan, subject to confirmation from consignee, bank, postal or customs authorities or by any other carrier or by adjusters appointed by or on behalf of insurers of non-delivery to the consignee.

The loan agreement is to specify that the loan is without interest and in event of recovery prior to 90 days from sending insured agrees to repay the loan (or pro rata) and take delivery of the recovered diamonds; after 90 days from sending the loan will then be converted into a settlement to the insured and normal rights accrue to insurers

Other Losses:

To be paid or made good to the Assured not more than fourteen (14) days after acceptance of satisfactory proof of loss.

## 6) SPECIAL CONDITION FOR INTERNATIONAL SENDINGS BY PERSONAL CONVEYANCE

Where the insured has invoiced Valuables to a customer, and Cover under this Contract is to apply in respect of a Personal Conveyance by the customer to his place of business, the insured shall declare such movement to insurers prior to shipment. Rates and conditions to be agreed by insurers in respect of such movements.

Unique Market Reference:
B0799NJ100490d

7) It is hereby noted and agreed that where Valuables are held in Hong Kong offices of Malca Amit and Brinks awaiting payment by local buyer, the interest of the Valuables will cease from the time the buyer hands over payment to Malca Amit and Brink's and the Valuables are subsequently handed over the buyer.

In conjunction with the above mentioned the interest of the cheques and/or cash and/or travellers cheques and the like starts from the time it is handed to Brink's and Malca Amit for payment in lieu of the Valuables

## 8) UCC 1 CLAUSE

In respect of USA domiciled operations the following clause is to apply:

It is a condition precedent to recovery of claims in respect of entrustee infidelity that the insured shall, in respect of valuables entrusted to Third Party customers, domiciled within the USA, and shipped within the USA and which are not affiliated with the insured (hereinafter "Third Party Customers") file UCC – 1 to comply with the provisions of article 9 part 5 of the Uniform Commercial Code, or any subsequent amendments which may supersede this legislation.

It is understood and agreed that the condition relating to compliance with the above filing requirement shall also apply to entrustees (Subsequent Third Party Entrustees) to whom valuables are subsequently entrusted onwards by such Third Party Customers within the USA, although this shall not apply to valuables entrusted by Third Party Customers to an entrustee which is affiliated with the Customer to whom the insured originally entrusted the valuables and bound by the original filing. Failure to file a UCC-1 shall not bar recovery unless the infidelity loss occurred while the valuables were in the possession of the entrustee with respect to which a filing shall not have been made.

Coverage for entrustee infidelity is therefore excluded in respect of Valuables insured hereunder entrusted either by the insured or by Third Party Customers to whom Valuables have been entrusted by the insured, where UCC-1's have not been filed and where the infidelity loss occurred while the Valuables were in possession of the Third Party Customers or Subsequent Third Party Entrustees with respect to which a UCC-1 filing shall not have been made.

In countries where similar legislation exists the equivalent provisions are also to be utilised and the above conditions complied with accordingly.

## 9) AMENDMENT TO UCC FILING REQUIREMENTS

Notwithstanding anything contained within this Contract to the contrary it is hereby noted and agreed to waive the requirement for UCC1 filings in respect of the following instances:-

1.      Partners – Valuables held by a jewellery dealer with a financial interest in the Valuables.

2.      Direct entrustments to Private Customers in respect of Valuables held for evaluation and potential purchase. However where the entrustments made to aforesaid Private Customers exceed seven (7) days in duration insured are to inform insurers for their agreement.

3.      Direct entrustments to third parties for promotional purposes. These memo holders, who are given Valuables for SPECIFIC EVENTS ONLY, are deemed to include the following:-

      I.   The Diamond Information Centre ( the DIC typically insures the Valuables themselves).

      II.  Prominent figures (e.g. performers, politicians, socialites, philanthropists to wear for high profile events).

      III. Photographers for photo shoots and the like

Unique Market Reference:
B0799NJ100490d

IV.   Parent and Related Companies

V.    Non US domiciled memo holders.

VI.   Gemmological Institute of America (GIA).

VII.  However where the entrustments made to aforesaid Customers listed in (ii) above exceed seven (7) days in duration Insured are to inform Insurers for their agreement.

4.      Where the average value with an entrustee does not exceed USD 500,000 subject to performance of credit checks being performed by Insured prior to giving valuables to them and the credit checks shall have been positive otherwise the waiver of UCC-1 filings shall not be given hereunder.

It is a condition precedent to recovery hereunder that for each of the entrustees included in the above agreement, the Insured shall have performed a Credit Check prior to giving valuables to them. The Credit Check shall have been positive otherwise the waiver of the UCC-1 filings shall not be given hereunder.

It is further understood and agreed that for Valuables which are further entrusted to a subsequent party by the 1st entrustee, the UCC-1 filing requirement is waived for values:-

I.    up to USD 1,000,000.

II.   In excess of USD 1,000,000 in respect of entrustments to retailers and to other parties listed in (1), (2) and (3) above.

Notwithstanding the abovementioned Insurers hereon agree to maintain coverage in the event of the entrustees failure to comply with the Insured's requirements.

All other terms, conditions and limitations of this insurance remain unaltered

## 10) ALARMS AND MAINTENANCE CLAUSE

It is warranted that the Assured set the burglar alarm in their premises at all times when the premises are left unattended and that the burglar alarms are maintained under contract. The cover will, however, remain operative if the alarm fails to function as a result of any circumstance beyond the Assured's control or unknown to them.
Notwithstanding the above, in the event of any forced evacuation the Assured shall undertake all possible measures to protect and safeguard property insured within the time-scale advised by such authority. The Assured shall be the sole judge for the purposes of safety of all personal on the premises of what measures shall be undertaken before any forced evacuation.

## 11) BOOKS AND RECORD CLAUSE

The Assured undertake to keep proper stock and account books in which all sales, purchases and all other transactions are recorded. These books, as well as those relating to sendings and entrustments, shall be made available for inspection to the Underwriters or their representatives in case of a claim being made under this Policy.

## 12) INVALID PAYMENTS CLAUSE

Any claim in respect of the Insured Interest hereunder, where the loss has been sustained by the Assured consequent upon handing over such Insured Interest to any third party against payment by;
(i) Cheque, Banker's Draft, or any other form of Money order, where such Cheque, Banker's draft or other form of Money order, shall prove to be false, fraudulent or otherwise invalid or uncollectable for any reason whatsoever.

Unique Market Reference:
B0799NJ100490d

(ii) Cash, Currency or Bank Notes which prove to be counterfeit, false or otherwise invalid for any reason whatsoever.

(iii) Credit Card, where the use of the same has been false, fraudulent or invalid, or when payment of the amount due is uncollectable for any reason whatsoever

## 13) CASH COVERAGE CLAUSE

It is understood and agreed that cash and customers cheques received in payment for stock are insured hereunder whilst within the safe(s) at the insured's premises or whilst being carried by insured employees only.

## 14) PRIVATE DWELLING HOUSE CLAUSE

Notwithstanding anything contained herein to the contrary no liability shall attach for burglary or theft of property insured as defined hereunder whilst in any private dwelling house of the insured, their principals, employees, representatives, travellers or agents, whenever the same is left without a responsible person therein, unless such Valuables is contained in a locked safe at the time of the loss.

## 15) PERSONAL CONVEYANCE CLAUSE

This insurance excludes all risks of loss or damage to the property insured when in transit unless the property insured is in the close personal custody and under the direct control of a Director or Employee of the Assured's Firm at all times other than when deposited in a bank Safe and/or Vault and/or whilst left for safekeeping with a Jeweller in the trade and/or while in custody of customs

## 16) WAR, STRIKES, RIOTS AND CIVIL COMMOTIONS COVER

Notwithstanding anything contained herein to the contrary it understood and agreed that coverage for shipments hereunder are extended to include coverage for War, Strikes, Riots and Civil Commotions and Confiscation and Expropriation as per

Institute War Clauses (sendings by post) CL 257 1/1/82
Institute War Clauses (Air Cargo) CL 258 1/1/82
Institute Strikes Clauses (Air Cargo) CL 260 1/1/82
Termination of Transit Clause (Terrorism) JC01 / 056
Confiscation and Expropriation Wording

## 17) LIEN CLAUSE

It is hereby understood and agreed that any claim for Loss or Damage occurring hereunder, will be payable to the insured and/or any Loss Payee as nominated by the insured as their interest may appear, but only in the event that any such claim may be recoverable under the terms, clauses, endorsements and conditions of this insurance.

## 18) HOTEL MOTEL CLAUSE

This Contract excludes loss and/or damage to Valuables whilst in Hotels or Motels unless the Valuables are deposited for safe keeping with the Hotel Management to be kept in the Hotel or Motel safe or vault or unless they are in compliance of the Personal Conveyance Clause herein

## 19) EXHIBITION CLAUSE

Notwithstanding anything contained elsewhere herein to the contrary it is understood and agreed that this insurance is extended to include coverage in respect of Valuables insured hereunder whilst at Exhibitions/shows subject to the following additional Conditions:-

Unique Market Reference:
B0799NJ100490d

During exhibition hours, Valuables shall be maintained and displayed in locked showcases, which are attended by at least one officer or employee or authorised representative of the insured. In respect of loss by Theft, all Showcases containing Valuables are to be kept locked and keys removed therefrom, other than during the process of items being added or removed by a responsible authorised person. Each time the showcase is opened it shall be immediately closed, relocked and the keys removed.

It is a condition precedent to recovery hereunder, in respect of insured Valuables removed from showcases, that no more than two items or one suite of goods be removed by any one officer or employee or authorised representative at any one time. This paragraph may be deleted by the Leading Company Insurer only, subject to full details of modus operandi at exhibitions being agreed by the Leading Company Insurer only.

During non-exhibition hours Valuables is only covered when kept in a locked safe and/or vault and/or guarded security room within the confines of the show at all times OR whilst being transported by an officer or employee of the insured within the confines of the show but only for the purpose of taking the Valuables directly from the safe, vault or guarded security room to the showcases and vice versa.

Coverage shall be maintained for insured Valuables within the exhibition site whilst not in showcases and whilst not in safe, subject to the personal conveyance clause and personal conveyance limits contained elsewhere within the wording.

## 20) BASELWORLD SAFE COMBINATION CHANGE CLAUSE

Notwithstanding anything else contained herein, in respect of insured Interest exhibited at BASELWORLD, it is a condition precedent to recovery for losses, other than where there is evidence of violent and/or forcible entry to and/or from safes in which insured interest is secured, whilst the booth and/or stand is unattended, that the safe combination is changed from that which the lock mechanism is set at when the insured accepts delivery of the safe. Compliance with this condition shall be evidenced by a copy of the form accepting responsibility for the safe in the event that the combination is changed, as required by the exhibition organizers.

## 21) DEFINITION FOR EMPLOYEE INFIDELITY

For the purposes of this insurance any series of losses arising from the infidelity of an employee, acting alone or in collusion with others shall be deemed one loss.

## 22) U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED NOT PURCHASED CLAUSE

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the insured has declined or not confirmed to purchase this coverage.

This insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this insurance.

LMA5092
21/12/2007

Form approved by Lloyd's Market Association and model agreed by the International Underwriting Association

Unique Market Reference:
B0799NJ100490d

## 23) STANDARD S.A.I.A. EXCEPTIONS (APPLICABLE TO SOUTH AFRICAN AND NAMIBIAN LOCATIONS ONLY)

1. This Certificate does not cover loss or damage to property related to or caused by:

    I. Civil Commotion, Labour Disturbances, Riot, Strike, Lockout or Public Disorder or any act or activity which is calculated or directed to bring about any of the above;

    II. War, Invasion, Act of Foreign Enemy, Hostilities or Warlike Operations (whether war be declared or not) or Civil War;

    III. Mutiny, Military Uprising, Military or Usurped Power, Martial Law or State of Siege, or any other event or cause which determines the proclamation of maintenance of Martial Law or State of Siege.

    or

    Insurrection, Rebellion or Revolution.

    IV. Any act (whether on behalf of any organisation, body or person, or group of persons) calculated or directed to overthrow or influence any State or Government, or any Provincial, Local or Tribal Authority with force, or by means of fear, terrorism or violence;

    V. Any act which is calculated or directed to bring about loss or damage in order to further any political aim, objective or cause, or to bring about any social or economic change, or in protest against any State of Government, or any Provincial, Local or Tribal Authority, or for the purpose of inspiring fear in the public, or any section thereof;

    VI. Any attempt to perform any act referred to in Clause (iv) or (v) above;

    VII. The act of any lawfully established authority in controlling, preventing, suppressing or in any other way dealing with any occurrence referred to in Clause (i), (ii), (iii), (iv), (v) or (vi) above.

    If the Insurers allege that by reason of Clause (i), (ii), (iii), (iv) , (v), (vi) or (vii) of this Exception, loss or damage is not covered by this Certificate, the burden of proving the contrary shall rest on the Insured.

2. This Certificate does not cover loss or damage caused directly, or indirectly by or through or in consequence of any occurrence for which a fund has been established in terms of the war Damage Insurance and Compensation Act, 1976 (No. 85 of 1976).

Unique Market Reference:
B0799NJ100490d

## 25) APPOINTMENT OF CLAIMS ADJUSTERS

LONMAR Global Risks Limited are authorised to instruct loss adjusters on claims on Underwriters behalf from the following panel:

Montalbano Adjustment services Inc.
McLarens Young & associates Inc.
G. J. Smith & Associates Inc.
Hunter Waddingham
Oliver Insurance Services
Keith Babes
Toplis & Harding
H. Statman loss Adjusters & surveyors Ltd
Neil Lieberman Associates
Cunningham Lyndsay International
John Pearson & Associates
United Adjusters

Other Loss Adjusting firms may be added to the above panel subject to the agreement of the leading Underwriter.

## 26) SOTHEBY'S EXTENSION (*In respect of Julius Klein only*)

Cover is extended to include goods whilst at Sotheby's

Sum Insured        USD 2,500,000

Waiver Endorsement

Insurers hereon agree to waive the rights of subrogation action for loss of, or damage to, the insured interest whilst in the care, custody and control of Sotheby's and their associated, subsidiary or allied firms.

Notwithstanding the foregoing, rights of the recourse are not waived of the loss or damage to the insured interest is as a result of wilful misconduct, gross negligence or infidelity of Sotheby's their associated, subsidiary or allied firms.

## 27) PERSONAL JEWELLERY (*In respect of LLD Diamonds Ltd only*)

This Contract is extended to include the Personal Jewellery of

1. Mr Paul Rapps and Family.

Territorial Limits:        Worldwide

Sum Insured:        USD 1,200,000

2. Mr Leviev and Family.

Territorial Limits:        Worldwide

Sum Insured:        USD 400,000

Unique Market Reference:
B0799NJ100490d

## 28) PERSONAL JEWELLERY (*in respect of Julius Klein only*)

This Contract is extended to include personal Jewellery for the Julius Klein – Eliaz Diamonds and/or any affiliated and/or associated and/or subsidiary companies as may now or hereafter be formed

Territorial Limits        Worldwide

Sum Insured           USD 300,000

Notwithstanding the above Clause the Hotel/Motel clause is amended to read:

The Contract excludes loss and/or damage to the Valuables whilst in Hotels or Motels unless the valuables are deposited in the room safe and/or deposited with the Hotel or Motel management to be kept in the Hotel or Motel safe when the Hotel or Motel Room is left unattended by the Insured and/or their servants opt agents or representatives.

## 39) WAIVER EXTENSION (*in respect to Julius Klein only*)

It is hereby noted and agreed that all rights of recourse against Bonhams, 580 Madison Avenue, New York, NY 10022 and Bonhams, Suite 580, 2 Pacific Place, 88 Queensway, Admiralty, Hong Kong are waived in respect of this Insurance for an amount not exceeding USD 3,000,000.

Unique Market Reference:
B0799NJ100490d

## Short Rate Cancellation Table For Term of One Year

| Days Insurance in Force | Per Cent of One Year Premium | Days Insurance in Force | Per Cent of One Year Premium |
|---|---|---|---|
| 1 | 5% | 66-69 | 29% |
| 2 | 6 | 70-73 | 30 |
| 3-4 | 7 | 74-76 | 31 |
| 5-6 | 8 | 77-80 | 32 |
| 7-8 | 9 | 81-83 | 33 |
| 9-10 | 10 | 84-87 | 34 |
| 11-12 | 11 | 88-91 (3 mos) | 35 |
| 13-14 | 12 | 92-94 | 36 |
| 15-16 | 13 | 95-98 | 37 |
| 17-18 | 14 | 99-102 | 38 |
| 19-20 | 15 | 103-105 | 39 |
| 21-22 | 16 | 106-109 | 40 |
| 23-25 | 17 | 110-113 | 41 |
| 26-29 | 18 | 114-116 | 42 |
| 30-32 (1 mo) | 19 | 117-120 | 43 |
| 33-36 | 20 | 121-124 (4 mos) | 44 |
| 37-40 | 21 | 125-127 | 45 |
| 41-43 | 22 | 127-131 | 46 |
| 44-47 | 23 | 132-135 | 47 |
| 48-51 | 24 | 136-138 | 48 |
| 52-54 | 25 | 139-142 | 49 |
| 55-58 | 26 | 143-146 | 50 |
| 59-62 (2 mos) | 27 | 147-149 | 51 |
| 63-65 | 28 | 150-153 (5 mos) | 52 |

| Days Insurance in Force | Per Cent of One Year Premium | Days Insurance in Force | Per Cent of One Year Premium |
|---|---|---|---|
| 154-156 | 53 | 256-260 | 77 |
| 157-160 | 54 | 261-264 | 78 |
| 161-164 | 55 | 265-269 | 79 |
| 165-167 | 56 | 270-273 (9 mos) | 80 |
| 168-171 | 57 | 274-278 | 81 |
| 172-175 | 58 | 279-282 | 82 |
| 176-178 | 59 | 283-287 | 83 |
| 179-182 (6 mos) | 60 | 289-291 | 84 |
| 183-187 | 61 | 292-296 | 85 |
| 188-191 | 62 | 297-301 | 86 |
| 192-196 | 63 | 302-305 (10 mos) | 87 |
| 197-200 | 64 | 306-310 | 88 |
| 201-205 | 65 | 311-314 | 89 |
| 206-209 | 66 | 315-319 | 90 |
| 210-214 (7 mos) | 67 | 320-323 | 91 |
| 215-218 | 68 | 324-328 | 92 |
| 219-223 | 69 | 329-332 | 93 |
| 224-228 | 70 | 333-337 | 94 |
| 229-232 | 71 | 338-342 (11 mos) | 95 |
| 233-237 | 72 | 343-346 | 96 |
| 238-241 | 73 | 347-351 | 97 |
| 242-246 (8 mos) | 74 | 352-355 | 98 |
| 247-250 | 75 | 356-360 | 99 |
| 251-255 | 76 | 361-365 (12 mos) | 100 |

If insurance has been in force for less than one year, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

Unique Market Reference:
B0799NJ100490d

Rules applicable to Insurance with terms less than or more than one year:

A.      If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B.      If insurance has been in force for more than one year:

       1.      Determine full annual premium as for insurance written for a term of one year.

       2.      Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

       3.      Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

Unique Market Reference:
B0799NJ100490d

## INSTITUTE WAR CLAUSES (sendings by Post)

### RISKS COVERED

1. This insurance covers, except as provided in Clause 3 below, loss of or damage to the subject-matter insured caused by    **Risks Clause**

   1.1 war civil war revolution rebellion insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power

   1.2 capture seizure arrest restraint or detainment, arising from risks covered under 1.1 above, and the consequences thereof any attempt thereat

   1.3 derelict mines torpedoes bombs or other derelict weapons of war.

2. This insurance covers general average and salvage charges, adjusted or determined according to the contract of affreightment and/or the governing law and practice, incurred to avoid or in connection with the avoidance of loss from a risk covered under these clauses.    **General Average Clause**

### EXCLUSIONS

3. In no case shall this Insurance cover    **General**

   3.1 loss damage or expense attributable to wilful misconduct of the Assured    **Exclusions Clause**

   3.2 ordinary leakage, ordinary loss in weight or volume, or ordinary wear and tear of the subject-matter insured

   3.3 loss damage or expense caused by insufficiency or unsuitability of packing or preparation of the subject-matter insured (for the purpose of this Clause 3.3 "packing" shall be deemed to include stowage in a container or liftvan but only when such stowage is carried out prior to attachment of this insurance or by the Assured or their servants)

   3.4 loss damage or expense caused by inherent vice or nature of the subject-matter insured

   3.5 loss damage or expense proximately caused by delay, even though the delay be caused by a risk insured against (except expenses payable under Clause 2 above)

   3.6 any claim based upon loss of or frustration of the voyage or adventure

   3.7 loss damage or expense arising from any hostile use of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

### DURATION

4. This insurance attaches only as the subject-matter insured and as to any part as that part leaves the premises of the senders at the place named in the Insurance for the commencement of the transit and continues, but with the exclusion of any period during which the subject-matter is in packers' premises, until the subject-matter insured and as to any part as that part is delivered to the address on the postal package(s) when this insurance shall terminate.    **Transit Clause**

5. Anything contained in this contract which is inconsistent with Clauses 3.6, 3.7 or 4 shall, to the extent of such inconsistency, be null and void.

### CLAIMS

6. 6.1 in order to recover under this insurance the Assured must have an insurable    **Insurable Interest Clause**

Unique Market Reference:
B0799NJ100490d

interest in the subject-matter insured at the time of the loss.

6.2 Subject to 6.1 above, the Assured shall be entitled to recover for insured loss occurring during the period covered by this Insurance, notwithstanding that the loss occurred before the contract of Insurance was concluded, unless the Assured were aware of the loss and the Underwriters were not.

### MINIMISING LOSSES

7. It is the duty of the Assured and their servants and agents in respect of loss recoverable hereunder

> Duty of Assured Clause

   7.1 to take such measures as may be reasonable for the purpose of averting or minimising such loss,

   and

   7.2 to ensure that all rights against carriers, bailees or other third parties are properly preserved and exercised

   and the Underwriters will, in addition to any loss recoverable hereunder, reimburse the Assured for any charges properly and reasonably incurred in pursuance of these duties.

8. Measures taken by the Assured or the Underwriters with the object of saving, protecting or recovering the subject-matter insured shall not be considered as a waiver or acceptance of abandonment or otherwise prejudice the rights of either party.

> Waiver Clause

### AVOIDANCE OF DELAY

9. It is a condition of this insurance that the Assured shall act with reasonable despatch in all circumstances within their control.

> Reasonable Despatch Clause

### LAW AND PRACTICE

10. This insurance is subject to English law and practice.

> English Law and Practice Clause

1/1/82 CL257 © Copyright The Institute of London Underwriters

Unique Market Reference:
B0799NJ100490d

## INSTITUTE WAR CLAUSES (AIR CARGO) (excluding sendings by Post)

### RISKS COVERED

1. This insurance covers, except as provided in Clause 2 below, loss of or    Risks Clause
damage to the subject-matter insured caused by

   1.1 war civil war revolution rebellion insurrection, or civil strife arising
therefrom, or any hostile act by or against a belligerent power

   1.2 capture seizure arrest restraint or detainment, arising from risks covered
under 1.1 above, and the consequences thereof or any attempt thereat

   1.3 derelict mines torpedoes bombs or other derelict weapons of war.

### EXCLUSIONS

2. In no case shall this insurance cover         General

   2.1 loss damage or expense attributable to wilful misconduct of the Assured    Exclusions Clause

   2.2 ordinary leakage, ordinary loss in weight or volume, or ordinary wear and
tear of the subject-matter insured

   2.3 loss damage or expense caused by insufficiency or unsuitability of
packing or preparation of the subject-matter insured (for the purpose of
this Clause 2.3 "packing" shall be deemed to include stowage in a
container or liftvan but only when such stowage is carried out prior to
attachment of this insurance or by the Assured or their servants)

   2.4 loss damage or expense caused by inherent vice or nature of the
subject-matter insured

   2.5 loss damage or expense arising from unfitness of aircraft conveyance
container or liftvan for the safe carriage of the subject-matter insured,
where the Assured or their servants are privy to such unfitness at the
time the subject-matter insured is loaded therein

   2.6 loss damage or expense proximately caused by delay, even though the
delay be caused by a risk insured against

   2.7 loss damage or expense arising from insolvency or financial default of
the owners managers charterers or operators of the aircraft

   2.8 any claim based upon loss of or frustration of the voyage or adventure

   2.9 loss damage or expense arising from any hostile use of any weapon of
war employing atomic or nuclear fission and/or fusion or other like
reaction or radioactive force or matter.

### DURATION

3. 3.1 This insurance         Transit Clause

     3.1.1   attaches only as the subject-matter insured and as to any part as
that part is loaded on the aircraft for the commencement of the
air transit insured

        and

     3.1.2   terminates, subject to 3.2 and 3.3 below, either as the subject-
matter insured and as to any part as that part is discharged from
the aircraft at the final place of discharge

        or

       on expiry of 15 days counting from midnight of the day of arrival

Unique Market Reference:
B0799NJ100490d

of the aircraft at the final place of discharge, whichever shall first occur; nevertheless, *subject to prompt notice to the Underwriters and to an additional premium*, such insurance

3.1.3 reattaches when, without having discharged the subject-matter insured at the final place of discharge, the aircraft departs therefrom,

and

3.1.4 terminates, subject to 3.2 and 3.3 below, either as the subject-matter insured and as to any part as that part is thereafter discharged from the aircraft at the final (or substituted) place of discharge,

or

on expiry of 15 days counting from midnight of the day of re-arrival of the aircraft at the final place of discharge or arrival of the aircraft at a substituted place of discharge,

whichever shall first occur.

3.2 If during the insured transit the aircraft arrives at an intermediate place to discharge the subject-matter insured for on-carriage by aircraft or overseas vessel, then, subject to 3.3 below and to an additional premium if required, this insurance continues until the expiry of 15 days counting from midnight of the day of arrival of the aircraft at such place, but thereafter reattaches as the subject-matter insured and as to any part as that part is loaded on an on- carrying aircraft or overseas vessel. During the period of 15 days the insurance remains in force after discharge only whilst the subject-matter insured and as to any part as that part is at such intermediate place.  If the goods are on-carried within the said period of 15 days or if the insurance reattaches as provided in this Clause 3.2

3.2.1 where the on-carriage is by aircraft this insurance continues subject to the terms of these clauses,

or

3.2.2 where the on-carriage is by overseas vessel, the current Institute War Clauses (Cargo) shall be deemed to form part of this insurance and shall apply to the on-carriage by sea.

3.3 If the air transit in the contract of carriage is terminated at a place other than the destination agreed therein, that place shall be deemed to be the final place of discharge and such insurance terminates in accordance with 3.1.2. If the subject-matter insured is subsequently consigned to the original or any other destination, then, *provided notice is given to the Underwriters before the commencement of such further transit and subject to an additional premium*, such insurance reattaches

3.3.1 in the case of the subject-matter insured having been discharged, as the subject-matter insured and as to any part as that part is loaded on the on-carrying aircraft for the transit;

3.3.2 in the case of the subject-matter insured not having been discharged, when the aircraft departs from such deemed final place of discharge; thereafter such insurance terminates in accordance with 3.1.4.

3.4 Subject to prompt notice to Underwriters, and to an additional premium if

Unique Market Reference:
B0799NJ100490d

required, this insurance shall remain in force within the provisions of these Clauses during any deviation, or any variation of the adventure arising from the exercise of a liberty granted to the air carrier under the contract of carriage.

(For the purpose of Clause 3

"overseas vessel" shall be deemed to mean a vessel carrying the subject-matter from one port or place to another where such voyage involves a sea passage by that vessel)

4.  Where, after attachment of this insurance, the destination is changed by the Assured, held covered at a premium and on conditions to be arranged subject to prompt notice being given to the Underwriters.   **Change of Transit Clause**

5.  **Anything contained in this contract which is inconsistent with Clauses 2.8, 2.9 or 3 shall, to the extent of such inconsistency, be null and void.**

**CLAIMS**

6.  6.1 In order to recover under this insurance the Assured must have an insurable   **Insurable Interest Clause**

    interest in the subject-matter insured at the time of the loss.

    6.2 Subject to 6.1 above, the Assured shall be entitled to recover for insured loss occurring during the period covered by this insurance, notwithstanding that the loss occurred before the contract of insurance was concluded, unless the Assured were aware of the loss and the Underwriters were not.

7.  7.1 If any Increased Value insurance is effected by the Assured on the cargo   **Increased Value Clause**

    insured herein the agreed value of the cargo shall be deemed to be increased to the total amount insured under this insurance and all Increased Value insurances covering the loss, and liability under this insurance shall be in such proportion as the sum insured herein bears to such total amount insured.

    In the event of claim the Assured shall provide the Underwriters with evidence of the amounts insured under all other insurances.

    7.2 Where this insurance is on Increased Value the following clause shall apply:

    The agreed value of the cargo shall be deemed to be equal to the total amount insured under the primary insurance and all Increased Value insurances covering the loss and effected on the cargo by the Assured, and liability under this insurance shall be in such proportion as the sum insured herein bears to such total amount insured.

    In the event of claim the Assured shall provide the Underwriters with evidence of the amounts insured under all other insurances.

**BENEFIT OF INSURANCE**

8.  This insurance shall not inure to the benefit of the carrier or other bailee.   **Not to Inure Clause**

**MINIMISING LOSSES**

9.  It is the duty of the Assured and their servants and agents in respect of loss recoverable hereunder   **Duty of Assured Clause**

    9.1 to take such measures as may be reasonable for the purpose of averting or minimising such loss,

Unique Market Reference:
B0799NJ100490d

and

9.2 to ensure that all rights against carriers, bailees or other third parties are properly preserved and exercised and the Underwriters will, in addition to any loss recoverable hereunder, reimburse the Assured for any charges properly and reasonably incurred in pursuance of these duties.

10. Measures taken by the Assured or the Underwriters with the object of saving, protecting or recovering the subject-matter insured shall not be considered as a waiver or acceptance of abandonment or otherwise prejudice the rights of either party.

Waiver Clause

## AVOIDANCE OF DELAY

11. It is a condition of this insurance that the Assured shall act with reasonable despatch in all circumstances within their control.

Reasonable Despatch Clause

## LAW AND PRACTICE

12. This insurance is subject to English law and practice.

English Law and Practice Clause

NOTE:- It is necessary for the Assured when they become aware of an event which is "held covered" under this insurance to give prompt notice to the Underwriters and the right to such cover is dependent upon compliance with this obligation.

1/1/82 CL256 © Copyright The Institute of London Underwriters

Unique Market Reference:
B0799NJ100490d

## INSTITUTE STRIKES CLAUSES (AIR CARGO)

### RISKS COVERED

1. This insurance covers, except as provided In Clause 2 below, loss of or   Risks Clause
damage to the subject-matter Insured caused by

   1.1    strikers, locked-out workmen, or persons taking part in labour disturbances, riots or civil commotions

   1.2    any terrorist or any person acting from a political motive.

### EXCLUSIONS

2. In no case shall this insurance cover   General

   2.1    loss damage or expense attributable to wilful misconduct of the   Exclusions Clause
Assured

   2.2    ordinary leakage, ordinary loss in weight or volume, or ordinary wear and tear of the subject-matter insured

   2.3    loss damage or expense caused by insufficiency or unsuitability of packing or preparation of the subject-matter insured (for the purpose of this Clause 2.3 "packing" shall be deemed to include stowage in a container or liftvan but only when such stowage is carried out prior to attachment of this insurance or by the Assured or their servants)

   2.4    loss damage or expense caused by inherent vice or nature of the subject-matter insured

   2.5    loss damage or expense arising from unfitness of aircraft conveyance container or liftvan for the safe carriage of the subject-matter insured, where the Assured or their servants are privy to such unfitness at the time the subject-matter insured is loaded therein

   2.6    loss damage or expense proximately caused by delay, even though the delay be caused by a risk insured against

   2.7    loss damage or expense arising from insolvency or financial default of the owners managers charterers or operators of the aircraft

   2.8    loss damage or expense arising from the absence shortage or withholding of labour of any description whatsoever resulting from any strike, lockout, labour disturbance, riot or civil commotion

   2.9    any claim based upon loss of or frustration of the voyage or adventure

   2.10   loss damage or expense arising from the use of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

   2.11   loss damage or expense caused by war civil war revolution rebellion insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power.

### DURATION

3.  3.1    This insurance attaches from the time the subject-matter insured   Transit Clause
leaves the warehouse, premises or place of storage at the place named herein for the commencement of the transit, continues during the ordinary course of transit and terminates either

        3.1.1   on delivery to the Consignees' or other final warehouse, premises or place of storage at the destination named herein

Unique Market Reference:
B0799NJ100490d

    3.1.2   on delivery to any other warehouse, premises or place of storage, whether prior to or at the destination named herein, which the Assured elect to use either

          3.1.2.1 for storage other than in the ordinary course of transit or

          3.1.2.2 for allocation or distribution

          or

    3.1.3   on the expiry of 30 days after unloading the subject-matter insured from the aircraft at the final place of discharge,

          whichever shall first occur.

**3.2**   If, after unloading from the aircraft at the final place of discharge, but prior to termination of this insurance, the subject-matter insured is forwarded to a destination other than that to which it is insured hereunder, this insurance, whilst remaining subject to termination as provided for above, shall not extend beyond the commencement of transit to such other destination.

**3.3**   This insurance shall remain in force (subject to termination as provided for above and to the provisions of Clause 4 below) during delay beyond the control of the Assured, any deviation, forced discharge, reshipment or transhipment and during any variation of the adventure arising from the exercise of a liberty granted to the air carriers under the contract of carriage.

**4.**   If owing to circumstances beyond the control of the Assured either the contract of carriage is terminated at a place other than the destination named therein or the transit is otherwise terminated before delivery of the subject-matter insured as provided for in Clause 3 above, then this insurance shall also terminate *unless prompt notice is given to the Underwriters and continuation of cover is requested when the insurance shall remain in force, subject to an additional premium if required by the Underwriters,* either        Termination of Contract of Carriage Clause

    **4.1**   until the subject-matter is sold and delivered at such place or, unless otherwise specially agreed, until the expiry of 30 days after arrival of the subject-matter hereby insured at such place, whichever shall first occur,

       or

    **4.2**   if the subject-matter is forwarded within the said period of 30 days (or any agreed extension thereof) to the destination named herein or to any other destination, until terminated in accordance with the provisions of Clause 3 above.

**5.**   Where, after attachment of this insurance, the destination is changed by the Assured, *held covered at a premium and on conditions to be arranged subject to prompt notice being given to the Underwriters.*        Change of Transit Clause

**CLAIMS**

**6.**   6.1 In order to recover under this insurance the Assured must have an insurable interest in the subject-matter insured at the time of the loss.        Insurable Interest Clause

Unique Market Reference:
B0799NJ100490d

| | | | |
|---|---|---|---|
| 6.2 | | Subject to 6.1 above, the Assured shall be entitled to recover for insured loss occurring during the period covered by this insurance, notwithstanding that the loss occurred before the contract of insurance was concluded, unless the Assured were aware of the loss and the Underwriters were not. | |
| 7. | 7.1 | If any Increased Value insurance is effected by the Assured on the cargo insured herein the agreed value of the cargo shall be deemed to be increased to the total amount insured under this insurance and all Increased Value insurances covering the loss, and liability under this insurance shall be in such proportion as the sum insured herein bears to such total amount insured. | Increased Value Clause |
| | | In the event of claim the Assured shall provide the Underwriters with evidence of the amounts insured under all other insurances. | |
| | 7.2 | Where this insurance is on Increased Value the following clause shall apply: | |
| | | The agreed value of the cargo shall be deemed to be equal to the total amount insured under the primary insurance and all Increased Value insurances covering the loss and effected on the cargo by the Assured, and liability under this insurance shall be in such proportion as the sum insured herein bears to such total amount insured. | |
| | | In the event of claim the Assured shall provide the Underwriters with evidence of the amounts insured under all other insurances. | |

**BENEFIT OF INSURANCE**

8.  This insurance shall not inure to the benefit of the carrier or other bailee.  
Not to Inure Clause

**MINIMISING LOSSES**

9.  It is the duty of the Assured and their servants and agents in respect of loss recoverable hereunder  
Duty of Assured Clause

  9.1  to take such measures as may be reasonable for the purpose of averting or minimising such loss,

  and

  9.2  to ensure that all rights against carriers, bailees or other third parties are properly preserved and exercised

  and the Underwriters will, in addition to any loss recoverable hereunder, reimburse the Assured for any charges properly and reasonably incurred in pursuance of these duties.

10. Measures taken by the Assured or the Underwriters with the object of saving, protecting or recovering the subject-matter insured shall not be considered as a waiver or acceptance of abandonment or otherwise prejudice the rights of either party.  
Waiver Clause

**AVOIDANCE OF DELAY**

11. It is a condition of this insurance that the Assured shall act with reasonable despatch in all circumstances within their control.  
Reasonable Despatch Clause

Unique Market Reference:
B0799NJ100490d

**LAW AND PRACTICE**

**12.** This insurance is subject to English law and practice.

English Law and
Practice Clause

Unique Market Reference:
B0799NJ100490d

---

**TERMINATION OF TRANSIT CLAUSE (TERRORISM) JC 01 / 056**

**This clause shall be paramount and shall override anything contained in this insurance/inconsistent therewith.**

1.    Notwithstanding any provision to the contrary contained in this Certificate or the Clauses referred to therein, it is agreed that in so far as this Certificate covers loss of or damage to the subject - matter insured caused by any terrorist or any person acting from a political motive, such cover is conditional upon the subject – matter insured being in the ordinary course of transit and, in any event, **SHALL TERMINATE:**

**Either**

1.1    As per the transit clauses contained within the Certificate,

    **or**

1.2    on delivery to the Consignee's or other final warehouse or place of storage at the destination named herein,

1.3    on delivery to any other warehouse or place of storage, whether prior to or at the destination named herein, which the Assured elect to use either for storage other than in the ordinary course of transit or for allocation or distribution,

    **or**

1.4    in respect of marine transits, on the expiry of 60 days after completion of discharge overside of the goods hereby insured from the overseas vessel at the final port of discharge,

    **whichever shall occur first.**

2    If this Certificate or the Clauses referred to therein specifically provide cover for inland or other further transits following on from storage, or termination as provided for the above, cover will re-attach, and continues during the ordinary course of that transit terminating again in accordance with clause 1.

3    This clause is subject to English law and practice.

Unique Market Reference:
B0799NJ100490d

## CONFISCATION AND EXPROPRIATION WORDING

1.(a)   This Certificate is to cover loss of and/or damage to the property hereby insured directly caused by confiscation, seizure, appropriation, expropriation, requisition for title or use or wilful destruction by/or under the order of the Government (whether civil, military or de facto) and/or public or local authority of the country or place in which the vessel(s)/craft/property hereby insured are covered by the terms of this Certificate.

(b)   Nevertheless this Certificate does not cover any such loss or damage by or under the order of the Government and/or public or local authority of the country of dispatch.

(c)   In respect of such property as may be insured hereunder where limitation or exclusion of war coverage is made by the appropriate Institute War Clause, such limitation or exclusion of war coverage shall also apply to this Extension.

2.(a)   No claim to attach hereto for any loss arising from any debt, failure to provide bond or security, or any other financial cause, whether under court order or otherwise.

(b)   No claim to attach hereto for any loss arising from the repossession of property by any titleholder, or arising out of any contractual agreement to which any Insured protected under this Certificate may be party.

(c)   No claim to attach hereto for delay, deterioration and/or loss of market.

(d)   No claim to attach hereto for any loss unless preliminary notification of the occurrence giving rise to such loss shall have been advised in writing to underwriters as soon as practicable, and the insured undertake that at all times from the date of such preliminary notification they will do and concur in doing all things reasonably practicable to avoid or diminish the loss and to recover the whole of the property insured by this Certificate.

3.(a)   Warranted that the Insured comply in all aspects with the laws (local or otherwise) of any country within whose jurisdiction the property is likely to be in normal course of events.

(b)   Warranted all permits necessary for normal legal operation are obtained.

Should failure to comply with the above warranties prejudice this insurance to the extent of a loss, no liability shall attach hereunder.

4.   In the event of any claim hereunder, the insured undertake to subrogate to insurers the right of procedure against any other parties for the recovery of, or in respect of, the said property.

5.   This insurance does not cover any loss or damage which at the time of the happening of such loss or damage is insured by or would, but for the existence of this Certificate, be insured by any other existing Contract or policies except in respect of any excess beyond the amount which would have been payable under such other Contract or policies had this insurance not been effected.

6.   Insurers subscribing to this insurance hereby agree that if a new Government is installed in any place and after becoming the recognized or de facto Government of the place proceeded to confiscate or expropriate property by Government action by decree or other legislation or otherwise they would settle a loss if it fell under the terms of the Certificate Wording of the Insurance.

Insurers subscribing hereto acknowledge and accept that the Government might have been 'installed' by force or armed revolt.

Unique Market Reference:
B0799NJ100490d

## UNRESOLVED CLAIMS REVIEW CLAUSE

It is hereby noted and agreed that, for the purposes of premium calculation, unresolved claims for the previous policy years have not been taken into account by Underwriters for the annual premium hereon.

In consideration of the above, subject to payment of any unresolved claims for the previous policies, Underwriters will review the annual premium charged hereon and, if deemed appropriate, levy an additional premium or amend policy conditions, any such changes to be mutually agreed by both the Assured and Underwriters.

In the event of no agreement between Assured and Underwriters regarding the amount of additional premium (if any) both parties have the right to invoke the Cancellation Clause as contained within the Policy on a pro rata basis.

# Exhibit C

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

FIRM/AFFILIATE OFFICES
——
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C
WILMINGTON
——
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

August 21, 2012

**VIA EMAIL AND REGULAR MAIL**
Dennis M. Wade
Michael Bono
Wade Clark Mulcahy
111 Broadway
New York, N.Y. 10006

Re:    **Jewellers Block Policy No. B0799NJ100490d June 1, 2010 – May 31, 2011**
       **JKD Claim re Memo Diamonds to Olympic Diamonds Corp.**

Dear Dennis and Mike:

To confirm your call to me yesterday afternoon:

1)     You explained that you have been advised by the Gemological Institute of America
("GIA") that one of the diamonds included in Julius Klein Diamonds, LLC's ("JKD") 2010 loss
claim to Underwriters referenced above was recently submitted to the GIA for recertification in
Hong Kong.  We understand that a representative of the GIA contacted you as a result of
Underwriters' efforts to recover JKD's lost diamonds that are the subject of JKD's referenced
claim to Underwriters' for coverage under its policy.

2)     You advised that the diamond submitted to the GIA for recertification is a 3.08 ct. round
diamond, GIA Certificate Number 112901343, which is one of two diamonds delivered to
Olympic Diamond Corp. 580 Fifth Avenue, N.Y. ("Olympic") on June 2, 2010 on JKD's Memo
No. 342771. The value of the 3.08 ct. stone shown on the Memo is $232,848.00.

3)     A total of four diamonds were delivered to Olympic on three memos (No. 343246;  No.
342771 and No. 343982) in June, 2010.  Copies of the three JKD Memos to Olympic, which
include the 3.08 ct. diamond, are attached hereto.  As we previously advised, within one month's
time after delivery of the diamonds to Olympic, JKD demanded the return of all of the diamonds
delivered on Memo to Olympic, but only one diamond was returned - - the diamond on memo

1

343982, valued at $55,755. JKD was told that Olympic delivered the other diamonds to Ten Plus Ltd. in Hong Kong ("Ten Plus"), where JKD's memo diamonds were apparently wrongfully disposed of or stolen and were not returned to JKD.

4)   As you know, Ten Plus was later the subject of a liquidation proceeding in Hong Kong and none of JKD's diamonds were ever found or accounted for until one was apparently submitted to the GIA for recertification, about which you called yesterday.

5)   You further advised that Underwriters is seeking to recover the 3.08 diamond in GIA's possession, and has asked that GIA not release it from GIA's possession, but counsel for GIA has requested a letter from JKD or its counsel confirming that the 3.08 diamond referred to above was JKD's property, for which the referenced insurance claim to Underwriters was made in 2010.

Accordingly, as you requested, I am forwarding a copy of this letter and its attachments to the GIA and its counsel for that purpose. If you require anything further to assist you in the recovery of the 3.08 diamond or any of the other Memo diamonds for which JKD's claim was made to Underwriters, please contact me.

Very truly yours,

Jerome J. Lawton

Cc:

Ivy R. Cutler
Manager of Records & Recovery GIA Laboratory
Gemological Institute of America (GIA)
580 Fifth Avenue, Suite 200
New York, New York 10036-4794
Tel: 212-221-5858 ext. 3539
Fax: 212-997-7661
E-mail: ICutler@gia.edu

Capricci Barush
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
T 212 335 4638
F 212 884 8538
M 917 714 1440
E-Mail: Capricci.Barush@dlapiper.com

2



**MEMORANDUM**

**Julius Klein Diamonds, LLC**

80 West 47th Street • 9th Floor • New York, NY 10036
Tel (212) 719-1811 (800) 584-0619 • Fax (212) 921-1769

| Memo No. | Date | Cust. Acct. No. | HS |
|----------|------|-----------------|----|
| 543246 | 06/15/10 | 254 | |

CONSIGNED TO:

OLYMPIC DIAMOND CORP.
580 FIFTH AVENUE
SUITE 1200
NEW YORK NY 10036
NISSAN DAVID

SHIPPED TO:

OLYMPIC DIAMOND CORP.
580 FIFTH AVENUE
SUITE 1200
NEW YORK NY 10036
(212) 382-3888

| Lot No. | Stones | Carats | Description | Price Per Carat | Total |
|---------|--------|--------|-------------|-----------------|-------|
| b70-69626 | 1 | 7.98 | BR I VS2 1212990668 | 23760.00 | 189604.80 |



ALL RETURN SHIPMENTS MUST INCLUDE A PACKING LIST.

| TOTAL FOR MEMO: | 1 | 7.98 | | | 189604.80 |

GOODS ACCEPTED SUBJECT TO CONDITIONS EXPRESSED ON REVERSE SIDE
ALL RETURN SHIPMENTS MUST INCLUDE A PACKING LIST.

---

**MEMORANDUM**

**Julius Klein Diamonds, LLC**

20 West 47th Street • 9th Floor • New York, NY 10036
Tel (212) 719-1811 (800) 584-0919 • Fax (212) 921-1709

| Memo No. | Date | Cust. Acct. No. | HS |
|----------|------|-----------------|----|
| 542771 | 06/02/10 | 254 | |

CONSIGNED TO:

OLYMPIC DIAMOND CORP.
580 FIFTH AVENUE
SUITE 1200
NEW YORK NY 10036
NISSAN DAVID

SHIPPED TO:

OLYMPIC DIAMOND CORP.
580 FIFTH AVENUE
SUITE 1200
NEW YORK NY 10036
(212) 382-3888

| Lot No. | Stones | Carats | Description | Price Per Carat | Total |
|---------|--------|--------|-------------|-----------------|-------|
| b30-69957 | 1 | 3.18 | BR D F 14914805 | 75600.00 | 240408.00 |
| b30-69955 | 1 | 3.08 | BR D F 11129C1343 | 75600.00 | 232848.00 |



ALL RETURN SHIPMENTS MUST INCLUDE A PACKING LIST.

| TOTAL FOR MEMO: | 2 | 6.26 | | | 473256.00 |

GOODS ACCEPTED SUBJECT TO CONDITIONS EXPRESSED ON REVERSE SIDE.

The merchandise described on the reverse side of this Memorandum (the "Merchandise") is delivered to you on consignment and by acceptance thereof you expressly agree to the terms hereof. You hereby acknowledge and agree that this Memorandum confirms the consignment and the right of Julius Klein Diamonds, LLC ("JKD") to file a Financing Statement pursuant to the Uniform Commercial Code covering the Merchandise and the proceeds thereof. You agree to immediately notify JKD in the event of any name change or change in state of incorporation.

No sale of the Merchandise shall be made without the prior consent of JKD. You agree to keep the Merchandise and the proceeds from any sale of the Merchandise separately identifiable and will not commingle same. In the event of a sale by you, after receipt of consent from JKD, of the Merchandise, or any portion thereof, you agree that you will promptly remit to JKD the amount indicated on the reverse side of this Memorandum as representing the value or cost thereof (or such other sum as has been specifically agreed to by JKD in writing).

You agree that upon demand of JKD you will immediately return the Merchandise to JKD at your cost and expense, including freight and insurance. You agree to assume all risk of loss or damage to the Merchandise regardless of cause until same has been returned to JKD without damage.

You agree to indemnify and hold harmless JKD from and against any and all losses, damages, costs and expenses incurred by JKD as a result of your failure to return or pay for the Merchandise as set forth herein, including, without limitation, reasonable attorney's fees.

The terms of this Memorandum cannot be modified or amended except in a writing signed by JKD. In the event that a separate Consignment Agreement is executed by you in favor of JKD, the terms and conditions of same shall control in the event of any inconsistencies.

JKD warrants that any diamonds covered by this Memorandum have been provided in accordance with the DTC Best Practice Principles. For any product fabricated from rough diamonds mined from January 1, 2003 onward, JKD warrants that the diamonds have been purchased from legitimate sources not involved in funding conflict and are in compliance with United Nations Resolutions. JKD guarantees that the diamonds are conflict free based on personal knowledge and/or written guarantees from the supplier of the diamonds to JKD. For any products fabricated from rough diamonds mined prior to January 1, 2003, JKD warrants that conflict diamonds will not be knowingly sold by it and that, to the best of its ability, it will undertake reasonable measures to help prevent the sale of conflict diamonds by it in this country.

The merchandise described on the reverse side of this Memorandum (the "Merchandise") is delivered to you on consignment and by acceptance thereof you expressly agree to the terms hereof. You hereby acknowledge and agree that this Memorandum confirms the consignment and the right of Julius Klein Diamonds, LLC ("JKD") to file a Financing Statement pursuant to the Uniform Commercial Code covering the Merchandise and the proceeds thereof. You agree to immediately notify JKD in the event of any name change or change in state of incorporation.

No sale of the Merchandise shall be made without the prior consent of JKD. You agree to keep the Merchandise and the proceeds from any sale of the Merchandise separately identifiable and will not commingle same. In the event of a sale by you, after receipt of consent from JKD, of the Merchandise, or any portion thereof, you agree that you will promptly remit to JKD the amount indicated on the reverse side of this Memorandum as representing the value or cost thereof (or such other sum as has been specifically agreed to by JKD in writing).

You agree that upon demand of JKD you will immediately return the Merchandise to JKD at your cost and expense, including freight and insurance. You agree to assume all risk of loss or damage to the Merchandise regardless of cause until same has been returned to JKD without damage.

You agree to indemnify and hold harmless JKD from and against any and all losses, damages, costs and expenses incurred by JKD as a result of your failure to return or pay for the Merchandise as set forth herein, including, without limitation, reasonable attorney's fees.

The terms of this Memorandum cannot be modified or amended except in a writing signed by JKD. In the event that a separate Consignment Agreement is executed by you in favor of JKD, the terms and conditions of same shall control in the event of any inconsistencies.

JKD warrants that any diamonds covered by this Memorandum have been provided in accordance with the DTC Best Practice Principles. For any product fabricated from rough diamonds mined from January 1, 2003 onward, JKD warrants that the diamonds have been purchased from legitimate sources not involved in funding conflict and are in compliance with United Nations Resolutions. JKD guarantees that the diamonds are conflict free based on personal knowledge and/or written guarantees from the supplier of the diamonds to JKD. For any products fabricated from rough diamonds mined prior to January 1, 2003, JKD warrants that conflict diamonds will not be knowingly sold by it and that, to the best of its ability, it will undertake reasonable measures to help prevent the sale of conflict diamonds by it in this country.



**Julius Klein Diamonds, LLC**

30 West 47th Street • 9th Floor • New York, NY 10036
Tel (212) 719-1811 (800) 394-0919 • Fax (212) 391-1769

**MEMORANDUM**

| Memo No. | Date | Cust. Acct. No. | |
|---|---|---|---|
| 343982 | 06/27/10 | 254 | HS |

CONSIGNED TO:

OLYMPIC DIAMOND CORP.
580 FIFTH AVENUE
SUITE 1200
NEW YORK NY 10036
NISSAN DAVID

SHIPPED TO:

OLYMPIC DIAMOND CORP.
580 FIFTH AVENUE
SUITE 1200
NEW YORK NY 10036
(212) 382-3888

| Lot No. | Stones | Carats | Description | Price Per Carat | Total |
|---|---|---|---|---|---|
| 530-22160 | 1 | 3.15 | AS GVVS2 210343903 7/14/10 | 17700.00 | 55755.00 |

TOTAL FOR MEMO:    1    3.15    55755.00

GOODS ACCEPTED SUBJECT TO CONDITIONS EXPRESSED ON REVERSE SIDE
ALL RETURN SHIPMENTS MUST INCLUDE A PACKING LIST.

# Exhibit D

Complaint# 2012-018-06833

## New York City Police Department
## Omniform System - Complaints

| Report Cmd: 018 | Jurisdiction: N.Y. POLICE DEPT | Record Status: Ready for Signoff, No Arrest | | Complaint #: 2012-018-06833 |
|---|---|---|---|---|

**Occurrence INSIDE OF 580 5 AVENUE APT:**
**Location: 500**

Name Of Premise: JULIS KLEIN DIAMONDS LLC
Premises Type: COMMERCIAL BUILDING
Location Within Premise: COMMERCIAL ESTABLISH
Visible By Patrol?: NO

Precinct: 018
Sector: D
Beat:
Post: 35

**Occurrence From: 2010-06-02 10:00 WEDNESDAY**

Occurrence thru: 2012-08-22     12:15
Reported: 2012-08-22     12:15

Complaint Received: PICK-UP

Aided #
Accident #
O.C.C.B. #

**Classification: GRAND LARC**

Attempted/Completed: COMPLETED
Most Serious Offense is: FELONY
PD Code: 438   LARCENY,GRAND FROM BUILDING,UN
PL Section: 15540
Keycode: 109   GRAND LARCENY

**Case Status: OPEN**

Unit Referred To: P.D.U.
Clearance Code:
Log/Case #: 0
File #: 5
Prints Requested? NO

| Is This Related To Stop And Frisk Report NO | SQF Number: 0000-000-00000 | Was The Victim's Personal Information Taken Or Possessed? NO | Was The Victim's Personal Information Used To Commit A Crime? NO |
|---|---|---|---|
| Gang Related? NO | OCCB FOD Log #: | Name Of Gang: | Child Abuse Suspected? NO |
| DIR Required? NO | | Child in Common? NO | Intimate Relationship? NO |

| **If Burglary:** | **Alarm:** | **If Arson:** | **Taxi Robbery:** |
|---|---|---|---|
| Forced Entry? | Bypassed? | Structure: | Partition Present: |
| Structure: | Comp Responded?: | Occupied?: | Amber Stress Light |
| Entry Method: | Company Name/Phone: | Damage by: | Activated: |
| Entry Location: | Crime Prevention Survey Requested?: | | Method of Conveyance: |
| | Complaint/Reporter Present?: | | Location of Pickup: |

| Supervisor On Scene - Rank / Name / Command : SGT IOVENO 018 | Canvass Conducted: NO | Translator(if used): |
|---|---|---|

**NARRATIVE:**
AT T/P/O ABOVE REPORTER STATES HE IS LAWYER FOR VICTIM ON VICTIM'S BEHALF. REPORTER STATES THAT ON ABOVE DATE AT T/M GAVE ABOVE PROPERTY TO OLYMPIC DIAMOND CORP LOCATED AT 580 5 AVENUE SUITE #1200 ON CONSIGNMENT. DIAMOND # WITH GIA#1112901343 SHOWED UP IN THE HONG KONG OFFICE OF GIA IN AUGUST 2012. FOR RECERTIFICATION. WHERE THE STONE IS PRESENTLY LOCATED. GIA CONTACTED VICTIMS LAWYER ON 8/20/12.

**No NYC TRANSIT Data for Complaint # 2012-018-06833**

| Total Victims: 1 | Total Witnesses: 0 | Total Reporters: 1 | Total Wanted: 0 |
|---|---|---|---|

| **VICTIM: # 1 of 1** | Name: JULIUS KLEIN DIAMONDS LLC | Complaint#: 2012-018-06833 |
|---|---|---|
| | Nick/AKA/Maiden: | Gang/Crew Affiliation: NO |

Complaint# 2012-018-06833                                           Page 2 of 3

| | |
|---|---|
| UMOS:<br>Sex/Type: BUSINESS<br>Race: UNKNOWN<br>Age: 0<br>Date Of Birth: UNKNOWN<br>Disabled? NO<br>Is this person not Proficient in English?:<br>If Yes, indicate Language:<br>N.Y.C.H.A Resident?<br>Is Victim fearful for their safety / life?<br>Escalating violence / abuse by suspect?<br>Were prior DIR's prepared for C/V? | Name:<br>Identifiers:<br><br>Will View Photo: YES<br>Will Prosecute: YES<br>Notified Of Crime<br>Victim Comp. Law. NO |

| LOCATION | ADDRESS | CITY | STATE/COUNTRY | ZIP | APT/ROOM |
|---|---|---|---|---|---|
| BUSINESS | 580 5 AVENUE | MANHATTAN | NEW YORK | | 580 |

**Phone #: BUSINESS:212-719-1611**

| Action against Victim: | Actions Of Victim Prior To Incident:<br>UNKNOWN |
|---|---|
| Victim Of Similar Incident:<br>NO | If Yes, When And Where |

| REPORTER: # 1 of 1 | Name:<br>LAWTON,JEROME | Complaint #:<br>2012-018-06833 |
|---|---|---|

| | |
|---|---|
| Nick/AKA/Maiden:<br>Sex/Type: MALE<br>Race: WHITE<br>Age: 071<br>Date Of Birth: 03/22/1941<br>Is this person not Proficient in English?: NO<br>If Yes, indicate Language: | Gang/Crew Affiliation: NO<br>Name:<br>Identifiers:<br><br>Relationship To Victim: |

| Location | Address | City | State/Country | Zip | Apt/Room |
|---|---|---|---|---|---|
| BUSINESS<br>HOME-PERMANENT | 4 TIMES SQUARE | MANHATTAN | NEW YORK | 10036 44236 | |

**Phone #: BUSINESS:212-738-6298**

| PROPERTY: | | Complaint #2012-018-06833 |
|---|---|---|
| Lost/Stolen/Found:<br>STOLEN | Business/Personal/Both?:<br>BUSINESS | Owner Identification Num:<br>NONE |

| Item | Amt | Article Description | Serial # | $ Stolen | $ Recovered |
|---|---|---|---|---|---|
| 1. | 1. | DIAMOND STONE GIA #1112990668 | | 189000. | 0. |
| 2. | 1. | DIAMOND STONE GIA #14914805 | | 240000. | 0. |
| 3. | 1. | DIAMOND STONE GIA #112901343 | | 232000. | 0. |

TOTALS: STOLEN $61000. RECOVERED 0.

| EVIDENCE: | | | | | Complaint # 2012-018-06833 | |
|---|---|---|---|---|---|---|
| Evidence<br>Collected? | Evidence Collection Team/Crime Scene<br>Requested?: | ECT<br>Responded?: | ECT<br>Run#: | Crime Scene<br>Responded?: | Crime Scene<br>Number: |

Evidence Invoice #

## No IMEI Data for Complaint # 2012-018-06833

| Reporting/Investigating M.O.S. Name:<br>SSA IOVENO JERRY | Tax #:<br>915935 | Command:<br>M PCT N | Rep. Agency:<br>NYPD |
|---|---|---|---|

MIDTOWN NORTH PRECINCT Fax:212-767-8429      Aug 22 2012 05:02pm  P002/003

Complaint# 2012-018-06833

| Supervisor Approving Name: SSA IOVENO JERRY | Tax #: 915936 | Command: M PCT N | Rep.Agency: NYPD |
| Complaint Report Entered By: PAA RICH | Tax #: 323105 | Command: M PCT N | Rep.Agency: NYPD |
| Signoff Supervisor Name: | Tax #: 000000 | Command: | Rep.Agency: |

| END OF COMPLAINT REPORT # 2012-018-06833 |
| --- |

[ Print this Report ... ]

Exhibit E



**GIA**
GEMOLOGICAL INSTITUTE OF AMERICA®

New York
580 Fifth Avenue Suite 200  |  New York, NY 10036-4794
T: 212-221-5858  |  F: 212-575-3095
www.gia.edu

August 27, 2012

Mr. Martin Klein
Julius Klein Diamonds LLC
580 Fifth Avenue, Suite 500
New York, NY 10036
212-719-1811
212-813-6963 Fax
issac@juliusklein.com

Mr. Tat Keung Yee
9/F, Caroline Centre, Lee garden
28 Yun Ping Road
Causeway Bay, Hong Kong
952-9093-7513
D11-852-254-3512 Fax
terence_yee@aiab.com.hk

Re: 3.08 carat Round Brilliant Cut Diamond;
GIA Diamond Grading Report 1112901343 (the "Diamond")

Dear Messrs. Klein & Yee,

GIA has received from each of Julius Klein Diamonds LLC. ("JKD") and Yee Tat Keung ("YTK") competing claims of ownership with respect to the above referenced Diamond, which had been submitted to GIA by YTK but for which SASMF also claims to be rightful owner.

Under Section 9 of the GIA Client Agreement, GIA is notifying both parties simultaneously of these competing claims.  GIA encourages the parties to facilitate the resolution of these claims. However, please be advised that if within thirty (30) days from the date of this letter JKD, does not (a) resolve with YTK these competing claims of ownership, or (b) obtain a directive from law enforcement or an order, from a court having jurisdiction over GIA directing GIA to hold the diamond or to deliver it to a third-party, then GIA will consider returning the diamond to YTK, as the party who delivered the diamond to GIA.

Thank you in advance for your anticipated cooperation.

Sincerely,
GIA Laboratory

Ivy R. Cutler GG
Manager of Records & Recovery GIA Laboratory
212-221-5858 ext 3539
212-719-3097 (Fax)
icutler@gia.edu

Cc: Capricci Barush Esq.
   Mr. Jerome J. Lawton Esq.
   Wai Man Cheung, Director, GIA Hong Kong
   Peter Motalbano

The World's Foremost Authority in Gemology™  |  Ensuring the Public Trust through Nonprofit Service since 1931